HALE and another vs. THE MILWAUKEE DOCK COMPANY.

*Warehouse Receipts; Liability of Warehouseman — Evidence of customary course of trade.*

Defendant, being authorized by its charter to receive upon storage provisions etc., and to advance money and give receipts thereon (which receipts shall be *prima facie* evidence of the holder's title to the property), issued warehouse receipts, "for account of bearer," for a certain number of "barrels of mess pork, deliverable on return" of said receipts. The barrels receipted for were found to contain only salt; and defendant, though offering to deliver the identical barrels stored, refused to deliver mess pork. In an action by an innocent holder of the receipts for value, *held*, that defendant was *entitled to show*, that, among all persons purchasing or dealing in pork in the city of Milwaukee, it is the uniform practice to require warehouse receipts for well-known brands, and buy upon the reputation of the packer, or, in other cases, to require an inspection of the commodity to *attend the purchase* and be a condition of it, and that parties rely upon the warehouseman's receipt only for the custody of the property, and not for the quality or contents of the barrels.

APPEAL from the Circuit Court for *Milwaukee* County.

The defendant received in store from one White, a pork packer in Milwaukee, fifty-four barrels, which were marked "mess pork," and were branded with the name of said White as packer, but which, in fact, as was discovered sometime after, were packed with salt only. On receiving the property defendant issued a warehouse receipt, as requested by White, for "fifty-four barrels mess pork," as "received in store from McLaren

for account of bearer," and "deliverable on return of this receipt and payment of storage." The receipt did not show that the pork was packed by White. Plaintiffs took the receipt for value in the usual course of business, and afterward demanded of defendant fifty-four barrels of mess pork, and refused to accept the same barrels received from White, which were still in store, and which defendant offered to deliver; and they brought this action to recover the value of fifty-four barrels of mess pork. The defense was, that the property when received in store was not subject to inspection by defendant, and that it was so received, and the receipt issued, in good faith on defendant's part, and that the holder of the receipt was entitled only to the property actually stored, and intended to be described in the receipt.

On the trial, the defendant offered certain evidence as to the custom and course of trade in Milwaukee in regard to receipts, which was ruled out, and the nature of which will sufficiently appear from the opinion. By the direction of the court, the jury found a verdict for the plaintiffs; and defendant appealed from the judgment.

*E. Mariner*, for appellant, argued, among other things, that the defendant was merely a bailee and warehouseman, and was not, and did not pretend to be, a public inspector of property, nor an assurer of the contents of packages; that it was no part of the object of warehousing the property to have it inspected or its quality warranted, and it was not the duty of the warehouseman to inspect it; that the only object of the recital or description in such a receipt is to identify the property which is to be returned to the holder of the receipt, and it is sufficient for that purpose that it refers merely to the external appearance of the articles. 2 Blackf. 156; 12 How. 272; Abb. Ship. 339. The representation was not made to the plaintiffs. *Gardner v. Haven*, 25 N. Y. 595. The plaintiffs would be entitled to the packages bailed, and we could not prevent him from taking

them by tendering mess pork. *Duchess of Kensington's case*, Smith's L. C. No one is estopped to disprove a representation made by him in good faith, but procured from him by fraud. 2 Smith's L. C. (6th ed.) 750, 751; 4 Met. 69; 20 Conn. 98, 527; 25 id. 250. Again, one is not estopped by a representation which has not misled, and was not ordinarily calculated to mislead. We offered to prove that the custom was to require an inspection upon a transfer; that the warehouseman did not inspect; and that such receipts, as to this commodity, were relied upon only for custody; and this evidence should have been admitted.

*Finches, Lynde & Miller,* for respondents, contended that the warehouse receipt was negotiable paper (Laws of 1860, ch. 340; Laws of 1863, ch. 73), and the established rules of law, as to the defenses which may be set up against an innocent holder for value of such paper, are applicable here. *Crosby v. Roub,* 16 Wis. 628; *Mercer County v. Hacket,* 1 Wallace, 95; 1 Smith's L. C. 259; 1 Parsons on Notes and Bills, 274, 279; 20 How. (U. S.) 364; 1 Wallace, 203. 2. "Whenever one of two innocent parties must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it." *Lickbarrow v. Mason,* 2 Term, 70; 34 N. Y. 30; 15 Wis. 85; Story on Part. § 108, and authorities there cited; 25 N. Y. 595; 6 Mass. 425; 1 B. & Ad. 712; 12 Barb. 99; 5 Seld. 534; 7 Bosw. 372; *Strong v. Railway Company,* Am. Law Reg., Sept., 1867, 680; 2 Blatchf. 118; 1 Greenl. on Ev. §§ 207, 208; 24 Pick. 196; 4 Met. 381; 1 Wis. 382, 452; 2 id. 322; 3 id. 657; 10 id. 443; 11 id. 306; 1 Phillipps on Ev. (4th Am. ed.) 454, *n.* 129; Edwards on Bailm. 63.

COLE, J. Among the various offers of evidence made by the defendant on the trial was the following: An offer to prove that among all persons purchasing and dealing in the article of pork in the city of Milwaukee, which has been warehoused,

there is no inspector appointed by the chamber of commerce, but that parties purchasing either require warehouse receipts for the brand of a well-known packer in the city, and buy upon the credit and reputation of the packer, or that, where the commodity is packed by a person whose reputation is not a guaranty of the quality of the article, it is the uniform course of parties so dealing to require an inspection of the commodity to attend the purchase, and be a condition of the purchase; and that parties rely upon the warehouseman's receipt only for the custody of the property, and not for the quality or contents of barrels; and that Mr. White's brand was one of those where an inspection or examination would have been required before a purchase would have been made; such examination to be made, not by the warehouseman, but by an inspector.

This evidence was objected to, and ruled out by the court. Was the evidence admissible? We are inclined to hold that it was.

The objection to all this kind of evidence is, that as the defendant has given certain warehouse receipts, in which it is stated that it has received in store so many barrels of "mess pork," deliverable on return of the receipts and payment of storage, it is bound by this representation as to the contents of the barrels stored, at least so far as the plaintiffs are concerned, who have advanced money relying upon these representations, even though the barrels were fraudulently filled with salt or sand, instead of pork, by the packer. It is said that these receipts have a qualified negotiability, which excludes such defenses. The defendant is a company organized under a charter (chap. 424, Priv. Laws of 1864), authorized to receive upon storage, deposit or otherwise, grain, flour, and provisions, and to advance money, give receipts upon any property so stored or deposited with it. Such warehouse receipts, the charter declares, shall be deemed, in the hands of the holder thereof, *prima facie* title to the ownership of the property stored, both in law and equity. (Section 5.)

Now, it seems to us that the defendant, being a warehouse-man, may well be estopped, as against one who takes the ware-house receipt for a valuable consideration, from denying the truth of the statements to which it gives credit by its signature, so far as those statements relate to matters which are or ought to be within its knowledge or the knowledge of its agents; but that in respect to things not open to inspection and visible, like the contents of pork barrels, it ought not to be concluded by the description of the property in the receipt. This is the rule applied in the case of receipts or bills of lading given by common carriers, as to the interior condition of the property shipped (*Hastings v. Pepper*, 11 Pick. 41; *Shepard v. Naylor*, 5 Gray, 591; *Tarbox v. Eastern Steamboat Co.*, 50 Maine, 339; *Bissel v. Price*, 16 Ill. 408; *Bradstreet v. Heran*, 2 Blatchf. 116; and *Nelson v. Woodruff*, 1 Black, 156); and we cannot see why it is not also applicable to the case at bar. But it is said that these are cases arising between the original parties to the bill of lading, and that an entirely different principle of law controls in respect to these receipts issued for products which are intended for sale in the market, when in the hands of an innocent holder who has advanced his money upon them. So far as an innocent third party is concerned, it is claimed that the receipt obligates the defendant to fulfill the contract and deliver the property therein described, whether in fact that property was delivered to it for storage or not; in other words, that the defendant cannot discharge its contract by delivering to the plaintiffs the identical barrels, with their contents, which were actually bailed, but must deliver mess pork. But, however this might be under other circumstances, we think no such principle of law obtains when it appears that, by the uniform course of dealing in the article of pork in Milwaukee, parties purchasing require either a receipt for the brand of a well-known packer and buy upon the credit of such packer, or, when this is not the case, require an inspection of the article as a condition of

the purchase, only relying upon the warehouse receipt for the custody of the property, and not for the quality or contents of the barrels. It was proposed to show, on the part of the defendant, that, in respect to the articles of wheat and flour, the custom was to require them to be inspected by a person appointed by the chamber of commerce; and that warehousemen give receipts upon such inspection as to the quality and kind of article; and that parties buy relying upon that inspection as stated in the receipt; but that with the article of pork it was otherwise. Now in the former cases, if a warehouseman, without an inspection having been made, should issue receipts specifying the quantity and quality of the commodity, there would be no hardship in holding that he was estopped by his representations. For it would be his own fault if he gave receipts stating the quality, when no examination had been made. But why should the doctrine of estoppel be applied in a case where a party does not purchase the article relying upon the representations in the receipt in respect to the quality, but requires a receipt for the brand of a well-known packer, or else that an examination of the commodity be made at the time of the purchase? For we must assume that the plaintiffs purchased the pork like other purchasers in that market, relying, not upon the faith of the representations in the receipt, but upon something else. If, in accordance with the course of dealing in Milwaukee, Mr. White's brand was one of those where an inspection would be required before a purchase, why did not the plaintiffs see that it was made? It will not do for them to say that they relied upon the representation of the receipt, because the offer was to show, that as to the pork, the receipt was only relied upon by purchasers for the custody of the property, and not for the quality or contents. In our opinion, the principle of estoppel would not apply to such a case, and preclude the defendant from showing that there were concealed defects in the pork.

It is admitted that the receipts were effectual to transfer the title to the plaintiffs of the parcels and barrels stored with the defendant. The defendant alleges that it is willing to deliver these barrels with their contents, in discharge of its contract. Should the facts be established which the defendant offers to prove, this is all the plaintiffs have a right to insist upon. The error of the court in excluding the evidence offered must reverse this case ; and it becomes unnecessary to decide the other questions discussed by counsel.

*By the Court.* — The judgment of the circuit court is reversed, and a new trial awarded.