ROBERT J. DEAN et al., Respondents, *v.* MARSHALL S. DRIGGS, Appellant.

A warehouseman is estopped by his warehouse receipt, in regard to any error or misstatement therein, only when it amounts to a representation as to a fact which was or in the ordinary course of business ought to have been within his knowledge, and which a third person, acting reasonably, would have a right to rely and act upon.

*It seems* the same rule applies to bills of lading issued by a common carrier.

It is no part of the duty of a warehouseman to open packages delivered to him for the purpose of determining their contents, and he is not chargeable with knowledge of their contents when they are not visible and open to inspection.

Defendant, who was a warehouseman, and had a bonded warehouse under license from the United States Government, received in store a number of barrels having the usual appearance of barrels in which Portland cement is packed, and having the usual marks thereon. They came from a foreign port from whence Portland cement is imported; they were represented to him to contain and he in good faith supposed they did contain that article. Defendant issued a warehouse receipt, stating the number of barrels, describing them as "Portland cement," and giving the marks thereon. The receipt was pledged as security for a loan. The barrels did not contain Portland cement, but a worthless material. In an action to recover damages, *held*, that no warranty as to the contents of the barrels could be implied from the language of the receipt; that this was merely descriptive, and defendant simply warranted that the number of barrels stated was delivered, that they were marked as stated, and that there was nothing in their appearance which would reasonably lead to any suspicion that the contents were not what was represented; and so, that the action was not maintainable.

*Meyer* v. *Peck* (28 N. Y. 590); *Armour* v. *M. C. R. R. Co.* (65 id. 111); *Miller* v. *H. & St. J. R. R. Co.* (90 id. 430); *F. N. Bank* v. *Dean* (*ante*, p. 110), distinguished.

Also *held*, that the provision of the Factor's Act (Chap. 326, Laws of 1858, amended by chap. 440, Laws of 1866), which prohibits a warehouseman from giving a receipt for goods, unless they have been actually received by him, was not applicable, and that a recovery could not be sustained under it.

(Argued February 2, 1893; decided February 28, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order

made February 19, 1892, which affirmed a judgment in favor of plaintiffs entered upon a verdict, and affirmed an order denying a motion for a new trial.

This was an action to recover damages brought by plaintiffs as transferees of two warehouse receipts issued by defendant.

The plaintiffs are brokers in the city of New York, and the defendant a warehousman in that city. The defendant on the 28th of March, 1885, issued to one Max Von Angern two warehouse receipts similar in all respects except as to the name of the vessel in which the merchandise was imported and the quantity which was delivered. One of the receipts reads as follows:

"M. S. DRIGGS & Co.'s WAREHOUSE.

"NEW YORK, *March* 28, 1885.

"Received from Max Von Angern, ex *Grimaldo*, in store 278–80 South street, to be held by us on storage, and to be delivered to his order on return of this receipt and payment of storage and charges, fifteen hundred barrels Portland cement.

No. 1394.
Marked

Negotiable.    ⬦ B C ⬦    Duty paid.

1,500 Bbls.

Storage per month 4.
Labor.

"M. S. DRIGGS & CO."

The second receipt named the vessel *Ruth* as bringing the merchandise, and stated it to be 963 bbls. of cement (Portland). There had been actually delivered to the warehousman the number of barrels of what was on each barrel described as Portland cement, as stated in the warehouse receipts.

Von Angern having obtained the receipts went with them to the plaintiffs and there executed a note for $3,500, and indorsed the warehouse receipts, and authorized the plaintiffs to deliver the note and the guaranty of payment indorsed thereon by plaintiffs at his request, together with the collateral securities (the warehouse receipts) to the Chemical National Bank of New York, and to receive the proceeds of the dis-

count of such note. The plaintiffs did so and received the moneys from the bank arising upon such discount and delivered them to Von Angern. The note was not paid by Von Angern when due and upon his default the plaintiffs paid the same to the bank because of their guaranty of payment, and took back the note and the warehouse receipts.

At the time when the plaintiffs indorsed the note at Von Angern's request, they testified that they relied in doing so upon the statement contained in the warehouse receipts, that defendant had received the stated number of barrels of Portland cement.

After the note had been paid by the plaintiffs they inquired as to the whereabouts of Von Angern, but were unable to find him and in fact he had absconded. The plaintiffs then went to the warehouse of defendant and there opened and examined a number of the barrels, and the result of the examination was the discovery that the contents of the barrels were not Portland cement. The material which had been packed in the barrels was a hardened substance like clay or mortar, coarse in its grain and different from any cement and practically worthless, while Portland cement was worth from $2.25 to $2.50 per barrel.

The plaintiffs then commenced this action against defendant, and set up the above facts, and that they relied upon the defendant's statement in the warehouse receipts that he had on storage Portland cement, as therein stated. The complaint seems to have been founded also upon some allegations of negligence, in the care of the barrels, on the part of the defendant, so that by his fault the article was rendered worthless; but that allegation was not proved, and the case rests upon the other facts alleged. The plaintiffs claimed to have been *bona fide* purchasers of the warehouse receipts for value, and that the defendant was bound to make good the truth of the statement therein contained that he had Portland cement on deposit, and they claimed damage to the amount of the Von Angern note ($3,500), which they had paid, with interest from the time of such payment.

The defendant denied all carelessness, and set up that he had received on storage from the importer the goods covered by the warehouse receipts referred to, and they had remained and then were on storage with him.

The question whether the article deposited was or was not Portland cement was litigated at the trial, and the case was submitted to the jury, upon the charge of the judge, that if the contents of the barrels were Portland cement of any description, however inferior in quality, the plaintiffs could not recover. Upon that issue the verdict was with the plaintiffs. The court also charged the jury that the plaintiffs had the right to demand, in this case, that the article should be Portland cement, and, if it were not, then they were entitled to recover from the defendant the principal of the Von Angern note, with interest.

The defendant asked the court to charge that to entitle the plaintiffs to recover on the receipts the jury must find the defendant knew the article was not Portland cement, and wilfully issued the receipts knowing that fact; also, that a warehouseman incurs no liability to the holders of a receipt issued by him whenever the goods are described according to their outward appearance, marks and description, except for their safe custody and return, unless he has knowledge or reason to believe that such description is untrue, and that a warehouseman is simply a custodian of the goods deposited with him on storage, and his liability does not extend beyond the proper care of the goods, and return of the same, on demand, on payment of storage, unless he wilfully misrepresents the character or condition of the goods. The requests were denied. Proper exceptions were taken to the charge as made and to the refusals to charge as requested.

The jury found a verdict for the plaintiffs for the full amount claimed.

*John Berry* for appellant. Defendant's motion for nonsuit should have been granted. (*Arthur* v. *Griswold*, 55 N. Y. 400; *Hale* v. *M. D. Co.*, 29 Wis. 488; *Meyer* v. *Peck*, 28 N.

Y. 596; *Bissell* v. *Price*, 16 Ill. 408; *Shepherd* v. *Naylor*, 5 Gray, 591; *Barrett* v. *Rogers*, 7 Mass. 297; *Sears* v. *Wingate*, 3 Allen, 103; *Ellis* v. *Willard*, 5 Seld. 529; *Blanchard* v. *Page*, 8 Gray, 287; *Pollard* v. *Victor*, 105 U. S. 7; *I. M. R. Co.* v. *Knight*, 122 id. 79.) Bills of lading and warehouse receipts are not negotiable at common law, nor have they been made so by the statute. (*Shaw* v. *R. R. Co.*, 101 U. S. 557; *Burton* v. *Wilkinson*, 18 Vt. 186; *Burton* v. *Duryea*, 40 Ill. 320; *Blanchard* v. *Page*, 8 Gray, 296; *Whitlock* v. *Hay*, 58 N. Y. 487; *Rice* v. *Cutler*, 17 Wis. 351; *Robson* v. *Swart*, 14 Minn. 371.) The plaintiffs were simply pledgees of the goods and took no greater or better right than Van Augern had. (*C. Bank* v. *Colt*, 15 Barb. 506.) A warehouseman, like a common carrier, is not authorized to open and inspect barrels or packages delivered to him for safekeeping. A carrier cannot do this, or insist upon it being done, before signing the receipt or bill of lading, and the usages and course of the business with warehousemen are the same. (*Hale* v. *Dock Co.*, 29 Wis. 488.) It is claimed by the plaintiffs and the trial was had upon the theory, as appears in the record by the evidence and by the charge of the court, that under the complaint a recovery could be had against the defendant as a warehouseman, under section 7 of chapter 326, Laws of 1858, as amended by chapter 440, Laws of 1866, in issuing these receipts, if the article covered by them was not Portland cement, although he believed the statement was true, and had no knowledge whatever that the article was other than as represented. This is untenable. (Laws of 1859, chap. 353; Laws of 1866, chap. 440; Penal Code, §§ 628–630, 726; *Hale* v. *M. D. Co.*, 29 Wis. 488; *Rowley* v. *Bigelow*, 12 Pick. 307, 314; *Stanton* v. *Eager*, 16 id. 467, 474; *Blanchard* v. *Page*, 8 Gray, 281; *Couch* v. *L. & N. W. R. Co.*, 11 C. B. 255; *Bross* v. *Maitland*, 6 El. & Bl. 482; *Barrett* v. *Barney*, 2 Abb. [U. S.] 197; *Rice* v. *Cutler*, 17 Wis. 351; *Gibson* v. *Stevens*, 8 How. [U. S.] 399, 400; *Gibson* v. *Chilicothe Bank*, 11 Ohio St. 311; *Shepard* v. *Naylor*, 5 Gray, 591; *Tarbox* v. *E. S. Co.*, 50 Me. 339; *Sears* v. *Wingate*, 3 Allen, 105; *Berkley* v. *Wat-*

*ling,* 7 Ad. & El. 29 ; *Marden* v. *Green,* 6 Watts, 421 ; *Barrett* v. *Rogers,* 7 Mass. 300 ; *Valieri* v. *Boyland,* L. R. [1 C. & P.] 382 ; *Jessel* v. *Bath,* L. R. [2 Exch.] 267 ; *Burton* v. *Duryea,* 40 Ill. 320 ; *S. N. Bank* v. *Wallbridge,* 19 Ohio St. 419 ; Edw. on Bailments, 287 ; *Willard* v. *Bridge,* 4 Barb. 361 ; *Suydam* v. *Smith,* 7 Hill, 182 ; *Thompson* v. *Dominy,* 14 M. & W. 480 ; *C. Bank* v. *Colt,* 15 Barb. 506 ; *Rice* v. *Cutler,* 17 Wis. 351 ; *Gardner* v. *Horn,* 25 N. Y. 595 ; *Barrett* v. *Price,* 16 Ill. 408 ; *Bradstreet* v. *Heran,* 2 Blatchf. 116 ; *Sears* v. *Wingate,* 3 Allen, 105 ; *Berkley* v. *Watling,* 7 Ad. & L. 29 ; *Marden* v. *Green,* 6 Watts, 421 ; *Barrett* v. *Rogers,* 7 Mass. 300 ; *Clark* v. *Barnwell,* 12 How. 282 ; *Haddow* v. *Parry,* 3 Taunt. 303 ; *Hedges* v. *Sealy,* 9 Barb. 214 ; *Hale* v. *M. D. Co.,* 29 Wis. 482 ; *Shaw* v. *R. R. Co.,* 101 U. S. 557 ; *Miller* v. *H., etc., R. Co.,* 90 N. Y. 430 ; *Robson* v. *Swart,* 14 Minn. 371 ; *McNeill* v. *Hill,* 1 Wood, 96 ; *Dows* v. *Perrin,* 16 N. Y. 325 ; *Meyer* v. *Peck,* 28 id. 590 ; *McCombie* v. *Spader,* 1 Hun, 193 ; *Griswold* v. *Havens,* 25 N. Y. 295 ; *Armour* v. *M., etc., R. Co.,* 65 id. 111 ; *Van Santan* v. *S. O. Co.,* 81 id. 171 ; *Ellis* v. *Willard,* 5 Seld. 530 ; *Yenni* v. *McNamee,* 45 N. Y. 614 ; *Ins. Co.* v. *Kiger,* 103 U. S. 352 ; *S. L., etc., R. R. Co.* v. *Knight,* 122 id. 79 ; *Lickbarrow* v. *Mason,* 2 D. & E. 63). The defendant's motion on the minutes to set aside the verdict, and for a new trial, should have been granted on the grounds upon which the motion was made, for the reasons stated hereinabove. (Code Civ. Pro. § 999 ; *Tate* v. *McCormack,* 23 Hun, 218 ; *Richardson* v. *Van Voorhies,* 20 N. Y. S. R. 668.)

*L. E. Warren* for respondent.  Defendant's motion for a nonsuit was properly denied. (Story on Bailments, § 414 ; Penal Code, § 629 ; *Whitlock* v. *Hayes,* 58 N. Y. 484 ; *Ely* v. *Holton,* 15 id. 595 ; *Moore* v. *Mausert,* 49 id. 332 ; *Calhoun* v. *Delhi Co.,* 28 Hun, 379 ; *Croswell* v. *Crane,* 7 Barb. 191, 195 ; *Davis* v. *Davis,* 75 N. Y. 221, 225, 226 ; *Drake* v. *Gilmour,* 52 id. 389, 393, 394 ; *People* v. *Lacombe,* 99 id. 43, 49 ; *Smith* v. *Moffat,* 1 Barb. 65, 67 ; *Hudler* v. *Golden,* 36

N. Y. 446, 447; *Bonnell* v. *Griswold*, 80 id. 128; *Lucas* v. *Dorrien*, 7 Taunt. 278, 290–292; *Meyerstein* v. *Barber*, L. R. [4 H. L.] 317; *Wilkes* v. *Ferris*, 5 Johns. 335; *Gibson* v. *Stevens*, 8 How. [U. S.] 385, 400; *Gibson* v. *C. Bank*, 11 Ohio St. 311; *Dairs* v. *Russell*, 52 Cal. 611; *Harris* v. *Bradley*, 2 Dill. 285.) The representâtion contained in the receipts that the 2,463 barrels contained Portland cement, estops defendant from claiming against the plaintiff that the barrels with contents other than Portland cement is all that he is bound to deliver to the owner of these receipts. (2 Herman on Estoppel, 1387, 1388; *McNeil* v. *Hill*, 1 Woolw. 97; *Goodwin* v. *Scammel*, 6 Cal. 540; *Adams* v. *Gorman*, 6 id. 68; *M. Bank* v. *P. Co.*, 5 Ch. D. 205; *Knights* v. *Wiffen*, L. R. [5 Q. B.] 660.) Plaintiff's right to recover is unquestionable. (*Byrne* v. *Weeks*, 7 Bosw. 372; *Dickerson* v. *Seelye*, 12 Barb. 99; *Ellis* v. *Willard*, 9 N. Y. 533; *Meyer* v. *Peck*, 28 id. 590; *Armour* v. *M. C. R. R. Co.*, 65 id. 111; *Van Santen* v. *S. O. Co.*, 81 id. 171; *Miller* v. *H. & S. J. R. R. Co.*, 24 Hun, 607; 90 N. Y. 430; Jones on Pledges, § 252; *Meyer* v. *Peck*, 28 N. Y. 598; *Armour* v. *M. R. R. Co.*, 65 id. 116; *Miller* v. *H. R. R. Co.*, 90 id. 430.) The position of these plaintiffs is similar to that of a *bona fide* purchaser for value. (*Cartwright* v. *Wilmerding*, 24 N. Y. 521; *Griswold* v. *Haven*, 25 id. 595; *Van Schoonhoven* v. *Curley*, 21 Hun, 205; *Miller* v. *Hannibal*, 90 N. Y. 430; *Allien* v. *Wotherspoon*, 18 J. & S. 417.)

PECKHAM, J. The question in this case is as to the meaning of the receipt issued by the defendant. Does it mean that the warehouseman acknowledges and asserts the fact that the merchandise delivered to him and consisting of twenty-five hundred barrels does in truth contain the genuine article, Portland cement, or does it mean that the warehouseman has received that number of barrels bearing the usual appearance of barrels in which Portland cement is packed and with the usual marks and signs thereon, and represented to him to be Portland cement, and which he in good faith supposes to be that article?

The defendant, at the time he received this merchandise, was a warehouseman, and in connection with his business he had a bonded warehouse under license from the United States government, and in it he received on storage imported, dutiable merchandise which could not be delivered until the duty was paid. The goods in question came to the defendant from the vessels named in the two receipts, which vessels came from Marseilles, France, from which place Portland cement is imported. The barrels came on trucks licensed to transport bonded merchandise, and when they came in the duty had not been paid. They were stored in the bonded warehouse under the joint custody of the defendant and a government officer. The duty was subsequently paid. The defendant testified that the warehouseman had no authority to open goods stored in a bonded warehouse without permission of the government.

These barrels the defendant testified were in character, appearance and style, the same as those in which Portland cement was imported. The brand on the barrel heads was " Wil, Neight & Co., Portland Cement, Trade Mark." There was also a label on each barrel to the same effect, and also some other signs and letters, all of them consistent with the idea that the barrels contained genuine Portland cement, and in brief the whole external appearance of the barrel was that of one in which Portland cement was usually imported. Upon these facts, the court charged as above stated.

We think the language of the receipts is merely descriptive of the barrels which defendant received.

It is meant to describe their outside appearance and that they were in truth marked and represented to be Portland cement. It cannot be that the language properly construed could mean that the warehouseman warranted such contents. If that were the meaning to be attributed to such a statement, the warehouseman could be safe only after he had examined critically and cautiously the contents of each box or barrel which he received. To do so would consume a great deal of time, and frequently necessitate the employment of experts who dealt in or were judges of the particular article claimed

to be delivered, and they would have to make such an exam-
ination of the article as its nature demanded before an opinion
could be arrived at.

Any one at all familiar with the business of a warehouse-
man knows that he could not transact business if he were first
to examine the contents of each package, barrel or box of
merchandise which was delivered to him and so packed as to
cover and conceal the real nature of the goods delivered. The
warehouseman cannot be supposed to know the contents of
barrels or boxes so delivered to him. All he can be fairly
charged with asserting by the mere acknowledgment of the
receipt of merchandise thus described is that the box or barrel in
which it is packed bears the same outward appearance as does the
box or barrel in which merchandise of the character described is
usually carried, and that there is nothing unusual or out of the
ordinary way of business in the marks, appearance, signs, labels
or character of the barrel or box from that in which goods of
the character described are usually transported, and that the
articles have been represented to him and that he believes
them to be as described.

It has been urged that a warehouseman may easily protect
himself from any liability by signing a receipt which in so
many words acknowledges the receipt of barrels or boxes said
to contain certain described merchandise, but the contents of
which are unknown by the warehouseman, and which, there-
fore, he does not warrant. This is true, but it does not answer
the objection to a warranty which arises out of the transaction
itself. In its very nature it seems to me plain that no war-
ranty as to contents can reasonably be implied under these
circumstances from the use of such language as these receipts
contain. Representations in a bill of lading or warehouse
receipt which should be held to be warranties should be con-
fined usually to those which the carrier or warehouseman may
ordinarily be assumed to have knowledge of, or which he or
his agents ought to know. As was said by Mr. Justice Hoar
in *Sears* v. *Wingate* (3 Allen, 103, at 107), when speaking of
a bill of lading, the master is estopped to deny the truth of

the statements to which he has given credit by his signature, so far as those statements relate to matters which are or ought to be within his knowledge.

It is known and understood that the business of a warehouseman is not that of an inspector of property delivered to him, nor is he an insurer of the contents of packages. It is no part of the duty of the defendant as a warehouseman to have property inspected or its quality warranted, and no proceedings are supposed to take place to enable a warehouseman to become acquainted with the contents of packages for the very reason that in his business it is unimportant what such contents are. The general object of giving a description of the property in the receipt, is for purposes of identification only, so that the identical property delivered to the warehouseman may be delivered back by him upon the return of the warehouse receipt, and for such purpose it is sufficient to describe the property as it by its external appearance seems to be. Such a description is not calculated to mislead any one in regard to the actual contents of the package. When the warehouseman described in this case the outward appearance and marks and the numbers on the barrels, he did warrant the correctness of his description so far as to say that the numbers stated were in reality delivered and that they were marked as stated, and also that there was nothing unusual in the appearance of the barrels or in the direction, marks or labels upon the merchandise which would reasonably lead to any suspicion that the contents were not what they were represented to be.

A warehouse receipt does not differ in this respect from a bill of lading. In the one case the warehouseman agrees to keep, and in the other case the carrier agrees to transport the goods which he receives, but the acknowledgement of delivery either to the warehouseman or to the carrier is essentially the same and the same rules govern in the interpretation of the receipt. In *Hastings* v. *Pepper* (11 Pick. 41), Shaw, Ch. J., said that the acknowledging to have received the goods in question in good order and well conditioned would be *prima*

*facie* evidence that as to all circumstances which were open to inspection and visible, the goods were in good order, but the carrier could show that a loss did in fact proceed from a cause existing at the time of the execution of the bill of lading, if it were not then open and apparent, and if he showed that fact it would be a defense.    This statement is approved in *Nelson* v. *Woodruff* (1 Black. [U. S.] 156 at 160).

In *Warden* v. *Greer* (6 Watts, 424), HUSTON, J., in delivering the opinion of the Pennsylvania Supreme Court, held that generally a bill of lading could not be contradicted, but that if a captain were innocently to receive a barrel of corn instead of a barrel of coffee, or a barrel of cider instead of Madeira wine, or a package of cotton linen instead of flaxen linen ; it would seem that his bill of lading would not and ought not to exclude him from proving this, as the captain does not open or otherwise examine the casks.

We think the rule is clearly expressed in *Hale* v. *Milwaukie Dock Co.* (23 Wis. 276 ; *S. C.*, on second appeal, 29 Wis. 482). It is there stated (29 Wis. at 489) that the warehouseman or carrier in regard to packages which are so covered as to conceal their contents, receipts them upon the representation of the bailor and upon the external appearance corresponding therewith as to contents.    He is not supposed to have any actual knowledge of their contents and the language of the receipt is not to be so understood.    It is a warranty that the barrels are so represented and so appear to him to the extent of his knowledge or means of information on the subject, and as they are represented and appear to him, so he represents or describes them in his receipt.

In the Wisconsin case here alluded to, the warehouseman receipted for fifty-four barrels of mess pork.    The Supreme Court held the defendant at liberty to show its readiness to re-deliver the identical property delivered to it and that the barrels when the defendant took them and unknown to it really contained nothing but salt.    A verdict for the plaintiff (who was a *bona fide* holder for value) was, therefore, set aside and a new trial granted.

It was stated upon the argument here that a different doctrine prevails in this state and counsel cited as authority for such claim Jones on Pledges, § 252. The learned author does so remark and the cases of *Meyer* v. *Peck* (28 N. Y. 590); *Armour* v. *Railroad Co.* (65 id. 111), and *Miller* v. *Hannibal & St. Jo. R. R.* (24 Hun, 607), are cited as authority for such alleged difference.

In *Meyer* v. *Peck* the question did not really arise. The facts showed the draft was paid by the defendant because drawn upon him by his own agent and without the least reference to the bill of lading. Chief Judge Denio referred to the principle as well understood, that a *bona fide* indorsee for value of a bill of lading could claim the benefit of an estoppel in his favor as against the carrier, and he said that such indorsee could rely upon the quantity of the merchandise acknowledged in the bill and might compel the carrier to account for the same, whether it was placed on board or not. But it is clear enough that a carrier thus situated ought to be estopped from showing that a less quantity was received, because it was his own carelessness in certifying to a fact which was or at any rate ought to have been within his own or his agent's knowledge. When one has advanced money upon the faith of a statement thus within the knowledge of the person making it, I think all would agree that the latter cannot be heard to dispute it. A carrier or a warehouseman is not, however, supposed to know the contents of merchandise so packed as to conceal such contents and, therefore, his ignorance cannot be said to be carelessness. In *Armour* v. *R. R.* (*supra*) the same principle was announced. The defendant acknowledged in its bill of lading the receipt of a quantity of lard which in fact it had not received. Drafts were attached to the bill and were paid on the faith of the defendant's acknowledgement in the bill of the receipt of the lard. It was held that the defendant was bound by the acts of its agent who signed the bill of lading and that it was estopped from denying the receipt of the lard.

It would seem as if this decision were right upon the plainest principles of justice. A written declaration was made that

acknowledged the receipt of property which in fact had not been delivered and which defendant's agent knew had not been delivered, but trusted that it would be. It was a statement of that nature which either was or necessarily ought to have been within the personal knowledge of the defendant's agents and as to such a statement another person had the right to believe it and act as if it were true. ·

The case of *Miller* v. *Hannibal & St. Jo. R. R. Co.* (*supra*) was reversed in this court in the 90th N. Y. 430.

The point under discussion in that case and the only one to which the attention of this court on appeal was directed was whether the written and printed part of the bill of lading should be read together, so that the printed part, which acknowledged the receipt of the merchandise "in apparent good order, contents unknown," should be construed in connection with the written part, which acknowledged the receipt of "30 bbls. eggs." It was held the whole should be construed together, and that the bill simply admitted the receipt of 30 bbls. described as containing eggs, but the actual contents of which were unknown. The judge, in the course of his opinion, said that if the description of the article were a representation that the barrels contained eggs, plaintiffs would have the right to recover, citing the case of *Meyers* v. *Peck* (*supra*). It was held that it was not. Although there was in the bill of lading the added expression, "contents unknown," yet there was no decision that in the absence of such expression the description would have amounted to a representation. That question was not before the court, was not in fact discussed directly, and was not decided. For the reasons already suggested, it would seem improper to so regard the description of merchandise which, when received, is so covered and packed as to securely conceal the actual contents from the carrier or warehouseman.

In *First National Bank of Chicago* v. *Dean* (decided at the January term and not yet reported) * there was a direct written representation on the receipts that the brandy

* *Ante,* page 110.

was stored in a "free warehouse" of defendant's, which expression means that the revenue tax or import duties have been paid on all goods there deposited. This was a representation of a fact which was within the knowledge of the defendant, and we held that he could not be permitted to show that the representation was untrue as against a *bona fide* holder for value of the certificates, who had purchased in reliance upon the representation that the brandy was "free." The real point in dispute there was, whether the plaintiff occupied the position of such a holder.

From this review of the authorities upon which it was claimed that the courts of New York had taken an exceptional stand, I think it quite plain that in truth no exceptional doctrine obtains here. I think that we in common with the courts of other states hold the carrier or warehouseman estopped in regard to any error or misstatement in the bill or receipt only when it amounts to a representation as to a fact which was, or in the ordinary course of business ought to have been, within his knowledge and which, therefore, such a third person acting reasonably would have a right to rely and act upon.

The court below, however, has sustained the right of the plaintiffs to recover in this case chiefly upon the provisions of the Factor's Act of 1858, as amended by that of 1866 (Chap. 326 of the Laws of 1858; chap. 440, Laws 1866). The first section of the amended act prohibits a warehouseman (among others) from issuing a receipt for any goods unless such goods shall have been actually received into the store or upon the premises of such warehouseman at the time of issuing the receipt.

The court held that if the goods were not Portland cement then the receipts issued by the defendant were untruthful and a violation of the above cited first section of the act.

We think the act was not intended to and does not reach this case. It was not passed in order to transform a warehouseman from a mere depositary to that of an insurer of the kind and quality of goods deposited with him. It was not

intended to alter the law in regard to the character of such a representation as is contained in these receipts or to make it any‑ thing other than a description of property as above stated. We are quite clear the act does not cover such a case as this if we assume the defendant was honestly mistaken when he described the goods actually received by him as Portland cement. The court withdrew from the jury the question of the knowledge of the defendant as to the character of the merchandise received by him as entirely immaterial, and hence we must assume his ignorance in discussing his liability.

The English statute to amend the law relating to bills of lading, passed in 1855 (18 & 19 Vic. chap. 111), recited that "it frequently happens that the goods in respect of which bills of lading purport to be signed have not been laden on board, and it is proper that such bills of lading in the hands of a *bona fide* holder for value should not be questioned by the master or other person signing the same on the ground of the goods not having been laden as aforesaid." It was then enacted that bills of lading in the hands of a consignee or indorsee for value, representing goods to have been shipped on board a ves‑ sel, should be conclusive evidence of such shipment as against the master, notwithstanding the goods or some part had not been so shipped, unless the indorsee had notice, etc.

This statute evidently referred to a case where there had been no delivery of any goods or only a part delivery of the amount receipted for, and we think the section of the acts of the legislature of this state above cited, refers to the same kind of omission. Signing a receipt for goods actually delivered, but known by the signer to be something other than that described in the receipt, would be a fraud and amount to a false representation for which the signer would be liable in any event.

But this issue was not submitted to the jury.

It is urged that such a receipt is made negotiable. We do not see that its negotiability is of the least importance in the decision of this question. That there is a certain kind of negotiability attached to this kind of a receipt and to a bill of

lading is not disputed. (*Dows* v. *Perrin*, 16 N. Y. 325 ; *Dows* v. *Greene*, 24 id. 638 ; *Lickbarrow* v. *Mason*, 1 Smith's L. C. [8th Am. ed.] 1159 and notes; § 6, Factors' Acts, above cited.)

It is not the same thing as the negotiability of a promissory note or bill of exchange. It could not be in the nature of things, but by the indorsement and delivery of such a receipt or bill of lading, the indorsee for value and without notice is entitled to hold the property represented thereby under the circumstances stated in the above mentioned acts.

In this case the plaintiffs are entitled to be treated as the owners of the property which was deposited with defendant, and they are entitled to its re-delivery to them upon payment of the charges, just the same as the original owner would have been but for the transfer. When, however, the plaintiffs demand, not the identical property which was deposited with the defendant, but such property as would have been deposited had the description in the receipt been correct, the right to demand such a delivery must be based not upon the mere transfer of the receipt, but upon the principle of estoppel; such a principle as precludes a party who has made a representation upon which another has acted from denying the truth of that representation. Obviously the first inquiry must be whether such a representation has been made, and when it turns out that it has not, the estoppel falls to the ground. We have seen that the character of the representations made by defendant was nothing more than that he had in fact received twenty-five hundred barrels of what purported to be and was described to him as and what he believed was Portland cement, packed as such cement was usually packed and bearing the outward indicia of such article. There is in such case no room for the application of that principle which decrees that when one of two equally innocent persons must suffer from the fraud of a third, that one should suffer who has enabled the third person to commit the fraud.

Upon the proper construction given to the language of the

receipt the representation contained therein was true. If, however, the plaintiffs chose to regard a mere description of the outward appearance of property packed in barrels as a representation and warranty by defendant that the contents were actually as described in the receipt and to advance money upon the faith of such alleged representations, the fault lies wholly with the plaintiffs, who placed a degree of faith in the correctness of the description which was totally unwarranted from the nature of the transaction and for which the defendant ought not to be held responsible.

Our conclusion is that the trial judge erred in his charge to the jury above quoted, and in his refusals to charge as above requested, and for such errors the judgment should be reversed and a new trial ordered, with costs to abide the event.

All concur.

Judgment reversed.