**PEKIN WAREHOUSE COMPANY, a Corporation, Appellant,**

v.

**The PARNELL COMPANY, Inc., a Corporation, Appellee.**

No. 15508.

United States Court of Appeals
Eighth Circuit.

Feb. 26, 1957.

**168**

Haywood Scott and John W. Scott, Joplin, Mo., filed brief for appellant.

Ray E. Watson, Joplin, Mo., filed brief, for appellee.

Before SANBORN, JOHNSEN and WHITTAKER, Circuit Judges.

JOHNSEN, Circuit Judge.

A holder in due course of some negotiable warehouse receipts sued the warehouseman for damages, under Missouri law, from failure of the goods to correspond with the description in the receipts.[1] The court, on a jury-waived trial, granted a recovery, and the warehouseman has appealed.

The action was one based on V.A.M.S. § 406.200, which provides: "A warehouseman shall be liable to the holder of a receipt for damages caused by the nonexistence of the goods or by the failure of the goods to correspond with the description thereof in the receipt at the time of its issue. If, however, the goods are described in a receipt merely by a statement of marks or labels upon them, or upon packages containing them, or by a statement that the goods are said to be goods of a certain kind, or that the packages containing the goods are said to contain goods of a certain kind, or by words of like purport, such statements, if true, shall not make liable the warehouseman issuing the receipts, although the goods are not of the kind which the marks or labels upon them indicate, or of the kind they were said to be by the depositor."

This provision is an enactment of section 20 of the Uniform Warehouse Receipts Act. The object and effect of the section are stated by the National Conference of Commissioners on Uniform State Laws, in 3 Uniform Laws Annotated 33, note, as follows: "This section imposes on the warehouseman a stricter rule than that generally in force in this country in that it makes a warehouseman liable for an innocent misdescription of

---

1. Federal jurisdiction rested on diversity of citizenship.

the goods. See Hale v. Milwaukee Dock Co., 1868, 23 Wis. 276, 99 Am.Dec. 169. But as the warehouseman can readily protect himself by inserting in the receipt only what he knows, namely, the marks on the goods, or the statements of the depositor regarding them, it seems best to make the warehouseman responsible for what he asserts." See also 93 C.J.S., Warehousemen & Safe Depositaries, § 4, p. 400.

The warehouse involved was an Internal Revenue Bonded Warehouse, 26 U.S.C.A.Int.Rev.Code of 1939, §§ 2872 et seq., and the goods on which the receipts were issued consisted of 281 barrels of distilled spirits entered in bond. The barrels themselves were reused charred containers, into the heads of which had been burned the words "Corn Whiskey", and onto which had been stenciled the further words "Treated with Oak Chips". Both of these designations on the barrel heads were required to be made as to the particular liquor, under the Regulations of the Treasury Department, to entitle it to entry and storage in the warehouse. See 26 C.F.R. § 186.60.[2] The duty of so marking the barrel heads, at the time the liquor was entered in the warehouse, was imposed upon the warehouseman. 26 C.F.R. § 185.253. If oak chips had not been added to the liquor by the distiller, the barrel heads would have been entitled to be branded simply as "Corn Whiskey".

The receipts had used only the term "Corn Whiskey", in their description of the kind of liquor, and had failed to include the words "Treated with Oak Chips". It was because of this omission that the holder of the receipts claimed misdescription and liability, in that, as the complaint alleged, under the Regulation referred to above, and also by the concepts of the liquor trade, "corn whiskey, treated with oak chips" denoted and constituted a different class or type of liquor than the term "corn whiskey", appearing in the receipts.

The principal contention made by the warehouseman in defense was that the receipts did not declare that the liquor was "corn whiskey" but merely stated in effect that it had been represented by the depositor thereof to be such. In form, each receipt certified that the warehouseman had received the barrels of distilled spirits specified in it (the serial number of each barrel, the original quantity of proof gallons, the date of making, and the distillery by which produced, being duly set out), "in apparent good condition and said to contain corn whiskey". Because of the use of the expression "said to contain corn whiskey", and as a matter of alleged depositor statement on which to predicate the right of use, the warehouseman asserted that he came within the exculpating provision of V.A.M.S. § 406.200, supra, and so could have no liability for failure of the receipts to show that the liquor was "corn whiskey, treated with oak chips", instead of "corn whiskey".

The trial court was of the view that, in appellant's legal status as a warehouseman of liquor in bond, he should be regarded, and Missouri law would so regard him, as being officially chargeable with knowledge that the liquor involved was "corn whiskey, treated with oak chips", and that a reference to it on his part, for any liquor purpose, as being "corn whiskey" would constitute a misdescription, so that his use of the expression "said to contain corn whiskey", in issuing negotiable receipts upon the liquor, was without such right of reliance and such exercise of responsibility as were intended and entitled to constitute a basis for exculpation from liability under V.A.M.S. § 406.200.

The court further held that, even if the warehouseman had not been so chargeable with knowledge as to the legal char-

---

2. 26 C.F.R. § 186.56 required indication on the barrel head too that the barrel was "reused cooperage". This requirement, however, is not of significance here, except that it may be noted that such indication on the barrel head, and the indication "corn whiskey", had duly been set out in the receipts, but not the indication "treated with oak chips".

acter of the liquor in the issuing of the receipts, there had not in fact been any statement on the part of the depositor, in connection with the issuance of them, which under the Missouri statute could provide a basis for the warehouseman to claim that the barrels had been "said to contain corn whiskey", and the presence of the expression in the situation was due simply to the warehouseman having made a routine use of his printed receipt-form.

The reason the court felt that appellant, as a warehouseman in bond, should be directly charged with knowledge of the character of the liquor, in his issuing of negotiable receipts upon it, was because of the strict responsibility imposed upon him under federal law to deal with such liquor, in all the custodial or "in bond" incidents of his business, covering the receiving, marking, entering, storing, transferring and releasing of the liquor, only upon the basis of the designations, records and reports prescribed as to it by the federal statutes and regulations, and not in any other manner.

Concededly, a warehouseman of liquor in bond cannot receive, mark, enter, store, transfer or release such liquor except upon the basis of the federal statutes and regulations. See Taney v. Penn Nat. Bank, 232 U.S. 174, 34 S.Ct. 288, 58 L.Ed. 558. His information or knowledge as to the character of the liquor, for purposes of any of these official incidents, must come to him from the checkings or approvings of the federal storekeeper-gauger and the records for the liquor made up therefrom, and not from any outside statements. See generally, on the functions of the storekeeper-gauger, Gauging Manual, 26 C.F.R. Part 186. The statutes make a federal storekeeper-gauger joint custodian of the warehouse with the proprietor. 26 U.S.C.A.Int. Rev.Code of 1939, § 2872. Forms are prescribed by the Treasury Department for use in relation to the various incidents or operations involved in the warehousing of the liquor, and the filled-out forms constitute or are the basis for the official information and records as to the liquor.[3] And copies of such forms required to be filled out by the storekeeper-gauger as are necessary for information or record purposes on the part of the warehouseman are supplied to him by the storekeeper-gauger, as the printed record before us indicates had been duly done in the present situation.

The warehousing of liquor in bond thus is, because of the "exigencies of the business", 232 U.S., supra, at page 183, 34 S.Ct. at page 290, a highly sensitive and minutely regulated business. The primary purpose of the warehousing regulations is, of course, to protect the Government in the revenues to which it is entitled on such spirits. The details and the exactness required in forms and records as to such spirits are designed, as indicated in 26 U.S.C.A.Int.Rev.Code of 1939, § 2915(a), "to insure the correct delivery thereof and proper accountability therefor".

The strictness imposed upon a warehouseman, as to designation, marking, etc., of such spirits, is also capable, however, of serving a purpose beyond the immediate status of the liquor in bond. It is possible for it to facilitate administrative identification and enforcement in respect to the subsequent use of the spirits.

Again—and perhaps of more significance here—since the outlet for such spirits in bond is primarily in the bottling or rectification field, the identification which is caused to be established by the regulations has also, as the record before us shows, resulted in the designations or terminology required in the warehousing of the liquor, being carried generally into the commercial dealings of buyers or brokers in relation to such liquor. These dealings in the trade are for the most part in the form of transfers of

---

**3.** We shall not undertake to set out a reference to all of the provisions of the regulations relating to records and forms as to liquor in bond. Some of them are §§ 185.154, 185.156, 185.157, 185.270, and 185.465 to 185.479(a), inclusive, of 26 C.F.R. See also 26 U.S.C.A.Int.Rev. Code of 1939, § 2915.

warehouse receipts. And such receipts are, in their commercial purposes, treated as being "completely equivalent to the spirits themselves". Taney v. Penn Nat. Bank, 3 Cir., 187 F. 689, 700.

In this connection, it is entitled to be observed that, while the federal law does not undertake to regulate generally the matter of issuing warehouse receipts upon liquor in bond, it does so far concern itself with the possibilities of the use and consequence of such instruments as to make it unlawful for anyone to sell or otherwise dispose of warehouse receipts for distilled spirits in bulk, "unless such warehouse receipts require that the warehousman shall * * * deliver such distilled spirits in bulk only to persons to whom it is lawful to sell or otherwise dispose of distilled spirits in bulk". 27 U.S. C.A. § 206(a) (2).

It similarly may be noticed that the State of Missouri too has indicated a measure of special concern about warehouse receipts issued on "intoxicating liquor", which it has not asserted as to receipts issued on goods in general, in that it prohibits, in respect to all intoxicating liquor (the language of the statute contains no restriction as to the form or location of the liquor), the selling, offering for sale, or giving away, of any warehouse receipt theron, "without first securing permission, written or printed, of the supervisor of liquor control to do so". 16 V.A.M.S. § 311.380.

Manifestly, as has been suggested, one of the dominating purposes in having negotiable warehouse receipts issued upon distilled spirits in bond is for use as a vehicle in the liquor traffic. The warehouseman here indicated his recognition of that fact, by the requirement which he had made his receipt-form contain, in accordance with 27 U.S.C.A. § 206(a) (2), supra, that he should have the obligation to deliver such distilled spirits in bulk under the receipts "only to persons to whom it is lawful to sell or otherwise dispose of distilled spirits in bulk".

On all these aspects, we think that the trial court's considered appraisal and interpretation of the Missouri statute, § 406.200, supra, was, in its application to the issuance of warehouse receipts, by a custodian under the federal statutes and regulations on distilled spirits in bond, not only an allowable one, but a persuasive one as well. As would seem to be apparent, such a warehouseman may not, as in the case of a warehouseman of ordinary goods, allow a depositor of liquor to tell him, and accept the depositor's word for, what the character or kind of the liquor is, for purposes of receiving it for entry and storage in his warehouse in bond. Legally, he can take the liquor, must engage in marking it, and is required to deal with it in his official actions, only upon the basis of what it is declared and established to be, under the means, processes and designations prescribed by the statutes and regulations.

In this situation, we believe that the trial court could naturally conclude that the Missouri courts would not construe V.A.M.S. § 406.200 as allowing a warehouseman of liquor in bond to disregard the status which the federal law fixed for the liquor as to character and designation, and the knowledge thereof with which the warehouseman was chargeable in respect to his entering, storing and releasing of the liquor, so that he could be exculpated from liability, in the issuing of negotiable receipts upon the liquor, to pass as a substitute for it in the avenues of trade, by closing his eyes to the official responsibility resting on him for all other purposes, and letting the depositor or owner of the liquor tell him, in this incident of his legal custodianship, which the federal statutes had not prohibited, of what the liquor consisted.

It is to be remembered that, while the incident of issuing receipts was technically done under state law, the instruments nonetheless were immediately related in their intended object and effect to the status of the liquor as a federal warehouse deposit and could be expected

to be accorded operativeness against such liquor by the storekeeper-gauger only as a matter of certainty in identification between the receipts and the official records for the liquor.

It would logically impress that, if the warehouseman had no right in law to listen to the voice of the depositor or owner of the liquor for purposes of receiving, storing, and releasing it, there should not, with legal consistency, be recognized a right so to listen for purposes of issuing instruments of description upon it in its official storage status, as a basis for traffic in it in that status.

▮ And so, while the statute, § 20, Uniform Warehouse Receipts Act, here V.A.M.S. § 406.200, by its terms allows a warehouseman in general to take the depositor's or owner's word on the character of the goods, for purposes of issuing warehoue receipts upon them, and to pass the effect of that acceptance on to the purchaser of such a receipt by a use therein of the expression "said to contain", the right of a warehouseman in this manner to escape liability for statement in description would reasonably be entitled to be regarded as being impliedly subject under the statute, such as it would be in other fields of representation, to the condition that such acceptance of the depositor's word and reliance upon his statement must have been done by the warehouseman with both actual and legal good faith.

Even before the Uniform Warehouse Receipts Act and its intent to impose a greater liability than previously upon a warehouseman in respect to descriptions in receipts, it had been held that a warehouseman could not be permitted to escape responsibility for misdescription as to a matter which he had a legal chargeability or duty of knowing. Thus, in Citizens' & Southern Bank v. Union Warehouse & Compress Co., 157 Ga. 434, 122 S.E. 327, 334, it was said: "We think the warehouseman is estopped from denying the description of the property in his receipts so far as it relates to matters which are, or ought to be, within his knowledge * * *, or which it is his duty to know. On the contrary, it would be too strict and severe a rule against a warehouseman to hold that he is estopped by the description in the receipts as to matters which are necessarily hidden from him, and which he is under no legal obligation to know." Cf. also Dean v. Driggs, 137 N.Y. 274, 33 N.E. 326, 19 L.R.A. 302.

In the purpose of § 20 of the Uniform Warehouse Receipts Act to impose a broader, not a narrower, liability upon a warehouseman, there can be no reason to view the protection intended to be afforded him by a use of the expression "said to contain" as being designed to abrogate his previous responsibility for a lack of either actual or legal good faith

Here, while, as the trial court found, there was not a lack of actual good faith in the situation, there was a lack of legal or chargeable good faith, in that a warehouseman of liquor in bond, having the responsibility as a matter of law of giving recognition to and dealing with such liquor in all his official actions on the basis of its kind and character, as established and made known to him for purposes of his warehousing of it by the processes and prescriptions of the federal statutes and regulations, could have no reason in normal conduct—such as a warehouseman in general might have, who was without knowledge or legal chargeability in respect to the nature of the goods deposited with him—to seek or use information from the depositor as to the character of the liquor, in making description of it, in its still-existing statutory capacity, in receipts issued to enable the liquor to be sold to third parties in its warehouse status and to be used as a means ultimately in obtaining its release.

A purchaser of such a receipt is entitled to rely upon there having been no lack of legal good faith on the part of the warehouseman from official irresponsibility, and on this basis to believe that, in using the expression "said to contain" in an instrument issued upon the liquor

in its warehouse status, the warehouseman had not presumed to ignore the identification and classification established by the statutes and regulations and the requirements imposed upon him officially of giving recognition thereto, so that he was allowing the depositor to tell him something different and was unconcerned about the correctness or incorrectness of such an assertion.

A warehouseman's choosing to make use of a depositor's assertion as to the character of liquor, which had been received and placed in bond under the statutes and regulations, should in such a situation estop the warehouseman to deny the correctness of the depositor's description, as a matter of having, by his irresponsible acceptance, legally made that description his own. Within the S.E. 327, 334, such a misdescription occurring of the liquor would not as to the expression used in the Citizens' & Southern Bank case, supra, 157 Ga. 434, 122 warehouseman constitute one of "matters which are necessarily hidden from him, and which he is under no legal obligation to know".

The factual situation here involved may be a little more fully stated. It is one in which appellant Pekin Warehouse Co. had purchased, and been authorized, pursuant to 26 C.F.R. § 185.91, to take over, an internal revenue bonded warehouse previously operated by Ozark Mountain Distilling Co. in conjunction with its distillery. Pekin Warehouse Co. did not purchase the distillery, but only the statutory warehouse. The liquor that is the subject of the suit had been deposited by Ozark Mountain Distilling Co. in bond in the warehouse at the time it was produced, and Ozark had issued warehouse receipts to the order of itself for the liquor. These receipts it was holding and continued to keep when the warehouse business was allowed by the Internal Revenue Department to be transferred to appellant. The receipts of which Ozark thus remained the owner described the liquor as "Corn Whiskey", and not as "Corn Whiskey, Treated with Oak Chips". On the inventory schedule which Ozark gave to appellant, the liquor similarly was listed and described as "Corn Whiskey". But in the "Storekeeper-Gauger's Report of Packages Transferred between Bonded Warehouses", which was prepared on Internal Revenue Service Form 1619, as required by the Regulations, and a copy of which, as executed by the storekeeper-gauger, was supplied to appellant as part of the authorizing and effecting of the transfer and for purposes of Pekin's chargeability, the liquor was duly shown as "Corn Whiskey—Treated with Oak Chips".

Pekin attempts to argue, as one of its secondary contentions, that the Storekeeper-Gauger's Report supplied to it did not contain sufficiently clear indication, so as to be entitled to charge it with knowledge, that the liquor was "Corn Whiskey—Treated with Oak Chips", instead of "Corn Whiskey". We are unable to see any merit in this contention. The Report was made up of six sheets of internal revenue official Form No. 1619. On three of the sheets, the storekeeper-gauger had inserted, beneath the column-heading "Kind of Spirits", the words "Corn Whiskey" followed by an asterisk, with a corresponding asterisk and notation at the bottom of the sheet, "Treated with Oak Chips". On the other three sheets, he had written the words, "Corn Whiskey—Treated with Oak Chips", vertically down the column space bearing the heading "Kind of Spirits". It does not seem to us that any warehouseman of such liquor in bond, familiar with the Regulations, as Pekin legally was chargeable with having become on engaging in the business, and responsibly examining the Report in the light of the Regulations, could fairly claim that the description set out would not clearly apprise him of the identity of, or establish an official status for, the liquor as "Corn Whiskey—Treated with Oak Chips", in distinction from general "Corn Whiskey".

Pekin's immediate difficulty arises from the fact that, subsequent to its taking over the warehouse, Ozark Mountain Distilling Co. sold the warehouse

receipts that are involved, and the purchaser requested Pekin to issue new receipts to his order in substitution. In issuing the receipts, Pekin paid no attention to the official "Storekeeper-Gauger's Report of Packages Transferred between Bonded Warehouses", which it had in its possession. It resorted only to the unofficial inventory list given it by Ozark, which had no legal significance for purposes of the statutes and regulations, as a check against the description "Corn Whiskey", which Ozark had used in the receipts issued to itself. Pekin then wrote in the words "Corn Whiskey", after the expression "said to contain" appearing in its printed receipt-form. The holder of the new receipts later negotiated them to plaintiff, who intended to make use of the liquor for blending purposes but was unable so to utilize it or dispose of it on that basis, because of its "treated with oak chips" character.

 While, as discussed above, we are of the opinion that the holding of the trial court, that appellant was not entitled to exculpation under V.A.M.S. § 406.200, because of its legal chargeability with knowledge that the description used by it was incorrect, is entitled to be affirmed, it may be added that we also think that the court's further view was not without substantial basis, that, beyond appellant's chargeability with knowledge, there had not been in the situation any such statement made in connection with the initial issuing or the reissuing of the receipts as § 20 of the Uniform Warehouse Receipts Act and V.A.M.S. § 406.200 contemplated could be accepted and used by appellant as a basis for asserting in its receipts that the barrels of liquor had been "said to contain Corn Whiskey".

Ozark's statement in the receipts which it had issued to itself, that the liquor was "Corn Whiskey", was not such a statement as appellant could treat as having been made by a depositor to a warehouseman, and having been relied upon by the latter in his receiving of the goods and issuing negotiable receipts upon them, and as thus having initially come within the exculpating provision of the statute and so being entitled to be carried over into appellant's reissuance of receipts on the existing warehouse status of the liquor. Ozark, in its issuance of its receipts, was both depositor of the liquor and warehouseman, and was accordingly simply speaking to itself. The Missouri statute provides a safeguard against any attempt by a warehouseman to claim exculpation under § 406.200 as to a third party in such a situation from a use of the words "said to contain" or other similar expression, by its requirement that "If the receipt is issued for goods of which the warehouseman is owner, * * * the fact of such ownership" must be disclosed by the receipt. V.A.M.S. § 406.030(8).

The receipts running from Ozark to the order of itself could therefore not be utilized by appellant as a basis, under § 406.200, for asserting in its own receipts that the barrels had been "said to contain Corn Whiskey". Nor, as against a purchaser of Ozark's receipts, was there a right to use the inventory list given by Ozark to appellant on the sale of the warehouse business, as a basis for inserting in its own receipts, issued in substitution for Ozark's receipts and in continuation of the existing warehouse status of the liquor, that the barrels had been "said to contain Corn Whiskey". Ozark's statements to appellant in the sale transaction, through its inventory list or otherwise, were those of a vendor of the warehouse speaking to the vendee, and not the voice of a depositor purporting to convey information to a warehouseman as a basis for getting his goods admitted to storage in the warehouse and having the warehouseman give him receipts therefor.

 The storage status of the liquor in bond had been established and would legally continue to exist until release was made of it by the Treasury Department, in accordance with the statutes.

and regulations. Taney v. Penn Nat. Bank, supra, 3 Cir., 187 F. 689, 699. A sale of the warehouse would be without effect upon this status, and the issuance of receipts upon the liquor by the purchaser of the warehouse, in mere formal substitution for those issued by the original warehouseman, with nothing more, could not be claimed to represent a new receiving and depositing of the liquor.

██ More therefore would be required than the routine turning in by a purchaser of receipts upon the liquor issued by the original warehouseman to himself, for the issuance of substitute receipts upon the liquor by the new warehouseman, to entitle the new warehouseman to use the expression "said to contain" in reference to statements in the old receipts made by the original warehouseman as a depositor to himself, as a basis for being exculpated from liability for misdescription of the liquor, under V.A.M.S. § 406.200. The original warehouse receipts issued by Ozark to itself were not capable under the statute of constituting such a representation by a depositor to a warehouseman that the liquor was "Corn Whiskey" as would entitle appellant to protection against adoption of that description in the receipts issued by it in substitution. Appellant by its adoption on this basis of Ozark's description would have the same liability to the holder of the receipts that Ozark had.

This is so because, as discussed above, Ozark's statement to itself was not such a representation by a depositor to a warehouseman as could furnish the basis under V.A.M.S. § 406.200 for an exculpating use of the expression "said to contain" in a warehouse receipt. And under the notice imparted by the requirement of § 406.030(8), appellant similarly had no right to adopt such a statement by a depositor-warehouseman to himself as a basis for its own use of the expression "said to contain". Hence, with nothing having been said to appellant by the purchaser of the receipts which could create a personal estoppel against him, there was not in the situation anything which § 406.200, in its grant of the right to a warehouseman to rely upon a statement made to him "by the depositor", recognized as a basis for a use of the expression "said to contain".

██ Appellant has made the further contention that there is in fact no actual difference in identity or character between "Corn Whiskey, Treated with Oak Chips", and general "Corn Whiskey", so that it was error for the trial court to hold that a misdescription had occurred. Neither the Regulations nor the evidence affords room for such an argument.

26 C.F.R. § 186.60(c) sets out a definition of what the term whiskey in general denotes. Paragraph (d) of the section distinguishes rye whiskey, bourbon whiskey, wheat whiskey, malt whiskey, rye malt whiskey, and corn whiskey from each other. Paragraph (j) then provides that any of these several whiskies "which in whole or in part is treated with wood chips through percolation or otherwise, during distillation or storage, shall [beyond their marking as rye whiskey, bourbon whiskey, etc.] be further marked, either by branding or stenciling, with the words 'Treated with oak chips'." Plainly, the Regulations thereby identify and classify whiskey so treated, whatever its initial character may have been, as representing a different kind, class or type of spirits, for purposes of its statutory status, than the original liquor. We are here concerned with the question of liquor classification, not that of drinkers' taste.

The final contention urged for reversal is that the court erred in the amount of damages which it awarded. The testimony in the record is legally sufficient to sustain the recovery which the court granted. There was a substantial evidential basis for the court's conclusion that the barrels of corn whiskey treated with oak chips in suit were valueless, both as a matter of market demand and unsuitability for general use, once their identification as liquor of that character had become known in the trade. Nor was plaintiff estopped from proving this fact, because it had originally believed, and in filing its initial complaint had alleged, that the whiskey had a value of a certain amount. Its mistaken belief in this respect and the reason for its unfamiliarity with the lack of value were duly explained, so that the court was not precluded from making examination into the question of the worthlessness of the liquor and its unsuitability for any available use.

Equally was the court entitled to regard a letter, dug up by appellant from its files after the case had been decided, in which plaintiff further had indicated an opinion as to the liquor having a certain value, as not being capable of changing - the result of the case, in view of the fact that this letter too had been written before plaintiff had become aware of the actual worthlessness of the liquor.

Without discussing appellant's arguments on the question of damages in further detail, it is sufficient here to say that we have carefully considered the arguments made in the light of the record, and there is no basis for us to say that there was error as a matter of law in the recovery which the court granted or in its refusal to reopen the case on appellant's motion for a new trial.

Affirmed.