# TANEY, TRUSTEE OF MILLER PURE RYE DISTILLING COMPANY, *v.* PENN NATIONAL BANK OF READING.

### APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 115.   Argued December 9, 10, 1913.—Decided January 26, 1914.

In determining the relative rights of the trustee in bankruptcy and a secured creditor the legal effect of the transaction securing the loan depends upon the local law.

The rule that physical retention by the vendor of goods capable of delivery to the vendee is a fraud *per se* does not apply in Pennsylvania in a transaction, the inherent nature of which necessarily precludes delivery, or in which the absence of a physical delivery is excused by the applicable usages of trade.

Under the revenue laws of the United States the Government, although not strictly a bailee, is in complete control of a distillery warehouse which is in effect a bonded warehouse of the United States.

A distiller is not debarred from passing title or creating a special interest by way of pledge in whiskey deposited in his distillery warehouse in conformity with the revenue laws of the United States.

This court will not condemn honest transactions growing out of the recognized necessities of a lawful business; and so *held,* that the established practice of. the distillery business to issue warehouse receipts for whiskey deposited in the distillery warehouse and pledge such receipts as security for loans is not one opposed to public policy.

In Pennsylvania, certificates issued by the owner of a distillery on whiskey in the distillery warehouse represent the property, and the delivery thereof as security for a loan made in good faith and in accordance with the usages of the trade amounts to actual delivery of the property itself.

187 Fed. Rep. 689, affirmed.

THE facts, which involve the relative rights of the trustee in bankruptcy, and the holder as security for loans of warehouse receipts for whiskey in a distilling warehouse issued by the distiller, are stated in the opinion.

*Mr. Joseph Hill Brinton* for appellant:

The company retained physical possession and control of the whiskey and received for its own use the charges for storage, except in so far as the Government's interest is concerned in the protection of its taxes.

The whiskey ordinarily could not be subject to the pledge in the absence of an actual or constructive delivery. Nothing appeared on the books of the company, and no other step was taken or attempted to negative the apparent ownership of the bankrupt company in whose possession and under whose control the whiskey was when the trustee took charge.

Where the pledge is left in the possession of the debtor, the burden of proof that there was a constructive delivery is upon the creditor claimant. *Barr* v. *Reitz,* 53 Pa. St. 256; *Hunter Construction Co.* v. *Lyons,* 233 Pa. St. 561.

Pennsylvania has adopted the English rule that if there be nothing but the absolute conveyance without the possession, that in point of law is fraudulent.

Appearances must agree with the real state of things, and the real state of things must be honest and consistent with public policy, affording no unnecessary facility for deception. *Clow* v. *Woods*, 5 S. & R. (Pa.) 277.

Where possession has been withheld pursuant to the terms of the agreement some good reason for the arrangement besides the convenience of the parties should appear, since public policy requires change of possession.

Where the subject of the sale or pledge is in the possession of a third party as bailee, constructive delivery is sufficient.

The law of Pennsylvania controls, and the courts of that State have universally held that a man may not be his own warehouseman. *Bank* v. *Jagode*, 186 Pa. St. 556; *Moors* v. *Jagode*, 195 Pa. 163; *Security Warehousing Co.* v. *Hand*, 206 U. S. 415; *In re Millbourne Mills Co.*, 172 Fed. Rep. 177.

Appellant contends that:

Either actual delivery by payment of tax and release of the whiskey for that purpose, or constructive delivery by removal to a general bonded warehouse and delivery of its warehouse receipt, was practicable, but neither means was adopted.

No constructive or symbolical delivery could be or was made by the so-called warehouse receipt given to the appellee.

The alleged custom of the trade, being contrary to public policy, cannot be sustained.

Individual interests arising from such a custom must suffer the consequences when the courts hold that they exist contrary to public policy. *Collins' Appeal*, 107 Pa. St. 590.

The convenience of the parties is not of moment. *Jenkins* v. *Eichelberger*, 4 Watts (Pa.), 121.

The real test is one of public policy and the question is not what rights as to possession the owner may have exercised, as between himself and the Government, but what opportunity he had of creating secret liens to the prejudice of the innocent and credulous.

A building erected by a distiller on the distillery premises pursuant to the statute has none of the characteristics of a regular warehouse. *Bucher* v. *Commonwealth,* 103 Pa. St. 523; *National Bank* v. *Sherer,* 225 Pa. St. 470.

Should the distiller desire to sell or pledge whiskey the act of August 27, 1894, §§ 51, 52, 28 Stat. 564, affords ample relief.

The court, for reasons of public policy, will not permit a man to be his own warehouseman and pass title by delivery of receipts, and thus afford an opportunity for duplication and fraud. The supervision of the Government lessens the danger of such fraud. Although the District Court held that the Government is a bailee, it is clear that in the one respect essential to prevent fraud, it is in no sense a bailee for it does not issue or control the issue of warehouse receipts and keeps no record of change of ownership.

Generally speaking, the Government cannot be said to be a bailee. It issues no receipts, recognizes no transfer of title or other interest, assumes no responsibility, and is not chargeable with negligence.

The Federal Government exercises the same control over the distillery as it does over the warehouse proper. The Internal Revenue Acts of the United States, Rev. Stat., §§ 3267, 3276, 3287, 3288, 3293, 3292 A, 3301, 3303, provide for the warehouse construction and custody and control thereof by the Government.

In no sense are the goods bailed to the Government, so as to permit constructive delivery to be made. *United States* v. *Thirty-six Barrels,* 7 Blatchf. 459; *Witten* v. *United States,* 143 U. S. 76.

In order that both the Government and the public

might be protected from fraudulent duplication of receipts, the act of 1894 was passed, whereby the distiller could defer the payment of tax and permit his product to ripen, but denied to him the opportunity of preying upon the credulous public. It is therefore in furtherance both of the convenience of the distiller and the protection of the public, that warehouse receipts should be negotiable only where the whiskey is deposited in a public bonded warehouse.

The injury to the liquor traffic dwelt upon by counsel is imaginary rather than real, and is indeed a weak support for a principle of law affording so widespread an opportunity for fraud and deceit. It is urged that the trade would be injured, and therefore the court should countenance a practice running counter to public policy. This injury, if real, could and would be corrected by proper legislation requiring the counter signature of some person in authority, in control of the warehouse, or some other simple provision entirely safeguarding the interests of the public. Such fraud is not possible in Pennsylvania since the passage of the act of May 16, 1901, Pub. Laws p. 194, and as to the law in that State see *Barlow* v. *Fox*, 203 Pa. St. 114; *Miller* v. *Browarsky*, 130 Pa. St. 372; *Rosenbaum* v. *Batjer*, 154 Pa. St. 544; *Sloan* v. *Johnson*, 20 Pa. Super. Ct. 643; *White* v. *Gunn*, 205 Pa. St. 229, citing *Clow* v. *Woods*, 5 S. & R. (Pa.) 575. See also *Conrad* v. *Fisher*, 37 Mo. App. 352; *Union Trust Co.* v. *Trumbull*, 137 Illinois, 146.

As to the law of the Federal courts relative to warehouse receipts, see *United States* v. *Witten*, 143 U. S. 76.

As to the rights of the trustee in bankruptcy in such a case as this, see *Bank* v. *Staake*, 202 U. S. 149; *Security Warehousing Co.* v. *Hand*, 206 U. S. 415.

*Mr. Lawrence Maxwell, Mr. Philip S. Zieber* and *Mr. A. Leo Weil*, with whom *Mr. Thomas Iaeger Snyder* was on the brief, for appellee.

MR. JUSTICE HUGHES delivered the opinion of the court.

On February 3, 1908, a petition in bankruptcy was filed against the Miller Pure Rye Distilling Company; it was adjudicated a bankrupt on February 19, 1908, and the appellant was appointed trustee. The Penn National Bank of Reading, Pennsylvania, the appellee, intervened in the bankruptcy proceeding with a petition asking for the delivery to it of two hundred barrels of whiskey stored in the bonded warehouse of the distilling company, upon the ground that the property had been lawfully pledged by the company to the bank. The District Court sustained the lien and accordingly held the claimant entitled to the delivery sought (176 Fed. Rep. 606); and, on appeal, this decree was affirmed by the Circuit Court of Appeals (187 Fed. Rep. 689).

The pertinent facts are these: On August 27, 1907, the bank lent to the distilling company $2500 for which the company gave its four months' note reciting the deposit with the bank, as collateral security, of "200 bbls. whiskey in bonded warehouse at Womelsdorf, Pa., as per Warehouse Rects, gauger's ctf. &c. accompanying." The form of the receipts is shown by the following copy of one of them:

"No. 5454.                                  25 Bbls.
First District of Pennsylvania.
United States Internal Revenue Distillery Bonded
Warehouse of Miller Pure Rye Distilling Company.
Ryeland, Berks Co., Pa., August 26th, 1907.
Received on Storage from Ourselves Twenty-five (25) Barrels of Miller Pure Rye Whiskey Distilled, Marked and Numbered as per Record Attached, Subject to our Order and Risk of Loss or Damage by Fire, The Elements, Leakage, Evaporation or Accident, Deliverable only upon Surrender of this Certificate, Payment of Tax and other

Charges due Thereon, and Storage at the Rate of Five Cents per Barrel per month, from August 26th, 1907.

Inspection Spring 1907.

Stored in Warehouse No. 2.

Serial Nos. of Packages 7964/7988.

Miller Pure Rye Distilling Co.,

S. V. NAGLE, President.

Address all Communications to Miller Pure Rye Distilling Company, Philadelphia, Pa.

Special Notice—Particular care should be taken of this Certificate as the whiskey cannot be delivered without its surrender."

These receipts were indorsed by the company, and, with the gauger's certificates, were delivered to the bank. The whiskey itself was not actually delivered and remained in the bonded warehouse. The note not being paid at maturity, the bank upon notice sold the warehouse receipts at public sale on February 5, 1908, and became the purchaser. This sale, however, is not material to the present question which turns upon the validity of the lien.

There is no doubt as to the intention and actual good faith of the parties. The loan was made in reliance upon the designated security and the ground of attack is that the lien failed for want of delivery of possession.

The legal effect of the transaction depends upon the local law. *Thompson* v. *Fairbanks*, 196 U. S. 516; *Humphrey* v. *Tapman*, 198 U. S. 91; *York Manufacturing Co.* v. *Cassell*, 201 U. S. 344; *Hiscock* v. *Varick Bank*, 206 U. S. 28; *Security Warehousing Co.* v. *Hand*, 206 U. S. 415, 425; *Bryant* v. *Swofford Bros.*, 214 U. S. 279. Reviewing the decisions of the Supreme Court of Pennsylvania with respect to sales—the principles of which were deemed to be applicable—the Circuit Court of Appeals reached the following conclusion: "It suffices to say that the law of

Pennsylvania in respect of the question we are now considering, is settled by a line of cases extending through nearly a century. Starting with the policy of the statute of Elizabeth, for the circumvention of fraud and deceit in sales of personal property (which nowhere in terms refers to retention of possession by a vendor), it has wisely developed the spirit of that statute and evolved the salutary rule, that where there is nothing in the case but the retention of a physical possession by the vendor, which he is capable of delivering to the vendee, such retention is fraud *per se*, and not merely evidence of fraud, even though there be nothing inconsistent with the most perfect honesty. But this rule is not applied by the courts of Pennsylvania to cases where the inherent nature of the transaction and the attendant circumstances are such as to preclude the possibility of a delivery by the vendor, that would be consistent with the avowed and fair purpose of the sale, or where the absence of a physical delivery is excused by the usages of the trade or business in which the sale was made." 187 Fed. Rep. 689, 696.

We entertain no doubt as to the correctness of this statement (*Clow* v. *Woods*, 5 S. & R. 275; *Barr* v. *Reitz*, 53 Pa. St. 256; *McKibbin* v. *Martin*, 64 Pa. St. 352; *Crawford* v. *Davis*, 99 Pa. St. 576; *Stephens* v. *Gifford*, 137 Pa. St. 219; *Pressel* v. *Bice*, 142 Pa. St. 263; *Garretson* v. *Hackenberg*, 144 Pa. St. 107; *Barlow* v. *Fox*, 203 Pa. St. 114; *White* v. *Gunn*, 205 Pa. St. 229); and it was in the light of these principles that the court below held that, considering the situation of the property and the usages of the business, the transaction in question was valid.

To insure collection of the heavy tax that is laid upon distilled spirits, the production is carefully supervised and the product is impounded. Rev. Stat., §§ 3247–3334, as amended; Act of May 28, 1880, c. 108, 21 Stat. 145; Act of August 27, 1894, c. 349, §§ 48–67, 28 Stat. 509, 563–568: 2 Comp. Stat. U. S. pp. 22 *et seq.* Every dis-

tiller is required to provide, at his own expense, "a ware-house, to be situated on and to constitute a part of his distillery premises, and to be used only for the storage of distilled spirits of his own manufacture until the tax thereon shall have been paid." This warehouse, when approved by the Commissioner of Internal Revenue, is declared by the statute to be "a bonded warehouse of the United States, to be known as a distillery warehouse," and is "under the direction and control of the collector of the district, and in charge of an internal-revenue store-keeper, assigned thereto by the commissioner" (§ 3271). While the statute provides that "every distillery ware-house shall be in the joint custody of the store-keeper and the proprietor thereof," the control of the Government's representative is made dominant, as in the nature of the case it must be in order to fulfill the purposes of the act. The warehouse, the statute continues, "shall be kept securely locked, and shall at no time be unlocked, or opened, or remain open, unless in the presence of such store-keeper, or other person who may be designated to act for him, as provided by law; and no articles shall be received in or delivered from such warehouse except on an order or permit addressed to the store-keeper and signed by the collector having control of the warehouse" (§ 3274). Under the departmental regulations "the only lock to the warehouse door must be the Government lock, the key of which must at all times be in charge of the store-keeper." There must be an immediate removal of the distilled spirits to the distillery warehouse as soon as they are drawn into casks or packages and gauged, proved and marked, as required, and thereupon the internal revenue gauger "shall, in the presence of the store-keeper of the warehouse, place upon the head of the cask or package an engraved stamp, which shall be signed by the collector of the district and the store-keeper and gauger; and shall have written thereon the number of proof-gallons con-

tained therein, the name of the distiller, the date of the receipt in the warehouse, and the serial number of each cask or package, in progressive order, as the same are received from the distillery" (§ 3287; Act of May 28, 1880, c. 108, § 6). The spirits must be entered for deposit in the warehouse under the regulations prescribed by the commissioner and bond must be given for the payment of the tax. The statute gives the form of the entry which, made in triplicate and duly verified, must set forth the name of the person making it, the designation of the warehouse, the specification of the spirits deposited, with the marks and serial numbers of the packages, etc., and a statement of the amount of tax. Withdrawal may be made on payment of the tax—which is payable within eight years—by application to the collector in charge of the warehouse and the making of a withdrawal entry (§§ 3293, 3294; Act of May 28, 1880, c. 108, §§ 4, 5, 21 Stat. 145; Act of August 27, 1894, c. 349, §49, 28 Stat. 509, 563). Provision is made for regauging and for an allowance for loss from leakage or evaporation (*Id.* § 50, 28 Stat. p. 564; Act of Mar. 3, 1899, c. 435, 30 Stat. 1349; Act of Jan. 13, 1903, c. 134, 32 Stat. 770); and after four years the spirits may be bottled in bond, in a separate portion of the warehouse set apart for that purpose, under the supervision of the government official (Act of March 3, 1897, c. 379, 29 Stat. 626). The storekeeper is to keep "a warehouse-book" in which all deposits and deliveries are to be entered with appropriate description including marks and serial numbers (§ 3301). And the removal "of any distilled spirits from a distillery warehouse . . . in any manner other than is provided by law" is punishable by fine and imprisonment (§ 3296).

The minute regulations of the statute, and the provision for prolonged governmental control, proceed upon a recognition of the exigencies of the business. It is a

matter of common knowledge that the product is not ready to be marketed for consumption when it is drawn from the still. It must undergo an aging process and for this purpose it is kept in store for several years. In laying the tax, Congress has taken this necessity into consideration permitting a long postponement of the required payment, the spirits meanwhile being held in charge of the Government's representative. It is, however, a matter of obvious business importance that the distiller should be able to release the capital represented in the cost of production of the spirits in store and to make it available for further production; and hence the practice is well established to deal with the product in the bonded warehouse by sale or pledge, storage certificates suitably identifying the property being delivered in lieu of the actual transfer of possession. The District Court found as a fact that it is "the unbroken custom of the trade to treat storage receipts for spirits as completely equivalent to the spirits themselves, and to sell or pledge them freely without question." This finding is approved by the Circuit Court of Appeals, and the fact that this custom exists we understand to be undisputed.

It is argued for the appellant that one cannot make himself a warehouseman of, his own goods and issue so-called receipts to take the place of the delivery which the law requires to give effect to his sale or pledge (*Security Warehousing Co.* v. *Hand*, 206 U. S. 415, 422; *Bank* v. *Jagode*, 186 Pa. St. 556). The argument ignores the special circumstances of the case and the restrictions imposed by law upon the distiller. The building is his, but the Government is in complete control. The spirits are his, but he is subject to fine and imprisonment if he attempts to remove them. It is undoubtedly true that the Government is not strictly a bailee. It assumes no responsibility to the distiller for the safe-keeping of the goods (*United States* v. *Whitten*, 143 U. S. 76, 78). But the immunity

which is incident to the exercise of governmental power in no way limits its effect upon the distiller's relation to the goods. They are effectually taken out of his power so that he is absolutely unable to make a physical delivery of them until the tax is paid. On the other hand, to pay the tax and remove the property before the aging process is completed would defeat the object of the deposit for which the statute provides, and would frustrate the purpose of a transfer of spirits in bond, which is an entirely lawful transaction. In these circumstances, the certificates—such as were here used—appropriately represent the property.

It is said that the distiller need not use his own warehouse but may place the goods in one of the general bonded warehouses established under the act of 1894 (28 Stat. pp. 564, 565). The appellee asserts that this would be impracticable; that no general bonded warehouse had been established in the collection district in question; that there are only twelve in the entire country with a capacity that is extremely small in comparison with the output of the distilleries. But, aside from this, the distillery warehouse is equally recognized by law; it is "a bonded warehouse of the United States." If it is a fit place for storage, the distiller is not obliged to remove the spirits elsewhere. And while they are thus deposited in conformity with law he is not debarred from passing title or creating a special interest by way of pledge.

The fundamental objection is that the custom, to which the entire trade is adjusted, is opposed to public policy. But we know of no ground for thus condemning honest transactions which grow out of the recognized necessities of a lawful business. The case is not one where credit may be assumed to be given upon the faith of the ostensible ownership of goods in the debtor's possession. Everyone dealing with distillers is familiar with the established practice in accordance with which spirits are held in store,

under governmental control, and are transferred by the
delivery of such documents as we have here. There is no
warrant for saying that creditors are misled by delusive
appearances. The usage serves a fair purpose and there
is no public policy which requires that the trade should be
thrown into disorder by a refusal to uphold it. It is urged
that frauds may be perpetrated by the duplication of such
documents; but the present dispute does not call for the
determination of the equities as between two innocent
purchasers. We are concerned here simply with the
rights of creditors represented by a trustee in bankruptcy
and we agree with the court below in its conclusion that,
in the circumstances disclosed, his right is inferior to that
of the appellee.

The decree is affirmed

*Affirmed.*