234 U.S. 399 (1914)
DALE
v.
PATTISON.
No. 330.
Supreme Court of United States.
Argued April 23, 1914.
Decided June 8, 1914.
APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.
*403 Mr. Lee Warren James for appellants.
Mr. W.H. Mackoy, with whom Mr. M.L. Buchwalter was on the brief, for appellee.
*404 MR. JUSTICE PITNEY, after making the foregoing statement, delivered the opinion of the court.
The transactions in question, as between Rohrer, the bankrupt, and Pattison, the appellee, are not distinguishable from those that were under consideration in Taney v. Penn Bank, 232 U.S. 174. In that case the Distilling Company deposited as security for the loan made by the Bank certain gauger's certificates, in addition to warehouse receipts issued by itself. But the sole significance of the gauger's certificates was that they constituted evidence that the whiskies had been deposited in the storehouse in barrels marked and numbered as required by the act of Congress. Since it is admitted in the present case that the whiskies in question were in fact on storage, as mentioned in the warehouse receipts delivered by Rohrer to Pattison, and that the barrels were stamped, marked, and numbered as therein stated, the fact that no gauger's certificate was delivered to Pattison is of no present consequence.
The legal effect of such a transaction depends upon the local law. In Taney v. Penn Bank, upon finding that, by the law of Pennsylvania, the ordinary rule as to the effect of the retention of physical possession by the vendor of personal property, which he is capable of delivering to the vendee, is not applied by the courts of that State to cases where the inherent nature of the transaction and the attendant circumstances are such as to preclude the possibility of a delivery by the vendor that would be consistent with the avowed and fair purpose of the sale, or where the absence of a physical delivery is excused by the usages of the trade or business in which the sale is made, we held that, considering the situation of the property and the usages of the business, the transaction between the distiller and the bank was valid, and gave to the latter a lien upon the whiskey superior to that of the trustee in bankruptcy.
The question here presented is whether the local law of *405 Ohio so far differs from that of Pennsylvania that a different result should be reached. In behalf of appellants it is insisted that there is in Ohio a settled legislative policy with reference to the change of possession necessary for the creation of liens on personal property. Section 8560 of the General Code is cited (formerly § 4150, Rev. Stat.). It reads as follows:
"SEC. 8560. A mortgage, or conveyance intended to operate as a mortgage, of goods and chattels, which is not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, subsequent purchasers, and mortgagees in good faith, unless the mortgage, or a true copy thereof, be forthwith deposited as directed in the next succeeding section."
It is insisted that this clearly and unmistakably establishes the doctrine that any transaction designed to give a security in personal property, if not accompanied by an actual change of possession must be placed in the form of a chattel mortgage and filed for record, in order to be good as against creditors. It seems to us, however, that we should not fail to consider the well-recognized distinction between a chattel mortgage and a pledge. A mortgage of chattels imports a present conveyance of the legal title, subject to defeasance upon performance of an express condition subsequent, contained either in the same or in a separate instrument. It may or may not be accompanied by a delivery of possession. On the other hand, where title to the property is not presently transferred, but possession only is given, with power to sell upon default in the performance of a condition, the transaction is a pledge, and not a mortgage.
There is no question that in Ohio, as elsewhere, a chattel mortgage, as well as a pledge, is valid between the parties, although not recorded. And, without the statute, it would *406 be good as against creditors, purchasers and mortgagees in good faith. The primary purpose of the act is to protect persons of these classes, who might otherwise sustain losses by relying upon the possession and apparent ownership of the chattels by the mortgagor. In the case of an ordinary pledge, there is no need of recording, since the pledgor at once parts with possession.
But what shall be said, when the transaction relates to personal property which is so situated that it is not within the power of the owner to deliver it to mortgagee or pledgee, and of which he has no such visible possession and apparent ownership as would probably be relied upon by creditors, purchasers, and mortgagees? Does § 8560, G.C., which declares that mortgages in such case shall be invalid against the designated third parties unless recorded, necessarily apply to transactions in the nature of a pledge, which are not mentioned in terms? The effect would be to greatly hamper, sometimes to prevent, transactions in the nature of a pledge, where only constructive possession of the property could be transferred. We cannot give to the section cited so extensive a meaning, in the absence of a decision by the state court adopting that construction. None such is referred to.
It is contended that a different rule exists in Ohio as to the delivery of possession in the case of pledges from that which obtains in the case of sales. Section 8619, G.C. (Rev. Stat., § 4197) is cited:
"SEC. 8619. When goods and chattels remain for five years in the possession of a person, or those claiming under him, to whom a pretended loan thereof has been made, they shall be the property of such person, unless a reservation of a right to them is made to the lender in writing, and the instrument recorded within six months after the loan is made, in the recorder's office of the county where one or both of the parties reside, or unless such instrument is filed as provided by law with respect to chattel mortgages. *407 But if a loan of goods and chattels is made to an art museum association within this State, such reservation of a right to them may be so made and recorded at any time within five years from the date of the loan."
But in the Code, this section is made a part of Chapter 4, entitled "Statute of Frauds and Perjuries." It partakes also of the nature of a statute of limitations. We are unable to see anything in it to establish the asserted distinction between sales and pledges, and we are unable to find that any such force has been given to it by the courts of Ohio.
The cases to which particular reference is made are Gibson v. Chillicothe Bank, 11 Oh. St. 311; Thorne v. Bank, 37 Oh. St. 254; and Hunt v. Bode, Assignee, 66 Oh. St. 255. All are decisions by the Supreme Court of the State. In the Gibson Case, in an action of trespass for levying upon and detaining certain property by virtue of an execution against their bailees, plaintiffs, in order to prove their property and right of possession, gave in evidence certain warehouse receipts, reading in substance as follows: "Received, Chillicothe, November, 13, 1852, of Messrs. Gibson, Stockwell & Co., and for their account, the following property, in good order, which we agree to hold irrevocably subject to their order, they having a lien thereon for the full cost of the same." (p. 312.) It was held that the legal effect of such a receipt was to pass the general property and right of possession to the holder, and that this effect was not impaired by the recital that the holder had a lien upon the property. The court, in its opinion, recognized that receipts of this kind, from long and general use in commerce and trade, had come to have a well-understood import among business men, which (as the court said) ought not to be confounded or perhaps even qualified by a strict construction of the literal and grammatical meaning of the words employed. And the court proceeded to say, (p. 317): "The receipts in this case are in *408 some particulars variant from each other; and yet we have no doubt they would all be recognized by commercial men, as of like import and equal validity as warehouse receipts. And if so, they as absolutely transfer the general property of the goods and chattels therein expressed, as would a bill of sale. They are a kind of instrument extensively used by commercial men, as the most convenient mode of transfer and constructive delivery of property, and facilitating the ready realization of the price of products by the producer remote from market. Public policy, as well as respect to good faith, requires that those like other instruments of commerce, should be so regarded in courts, as not to unjustly impair confidence in them elsewhere. And this view of the legal effect of such instruments, we think fully sustained by the authorities cited by counsel; and especially by the case of Gibson v. Stevens, 8 How. Rep. 384." It was therefore held that in spite of the recital that Gibson, Stockwell & Company had a "lien thereon for the full cost of the same," the warehouse receipts tended to prove that the plaintiffs had a general ownership in the property, and that the trial court erred in ruling otherwise. The citation of Gibson v. Stevens is significant, because in that case this court, in an opinion by Mr. Chief Justice Taney, recognized that where personal property is from its character or situation not capable of actual delivery, the delivery of a warehouse receipt or other evidence of title is sufficient to transfer the property and right of possession to another; and also because this decision was based in large part upon the usages of trade and commerce.
In Thorne v. Bank, ubi supra, it was held that an instrument in the form of a warehouse receipt, executed by a debtor to his creditor, upon property owned by the debtor, who was not a warehouseman, and made for the sole purpose of securing the creditor, was void as against other creditors where the property remained in the possession of the debtor. The court cited and relied upon Rev. *409 Stat., § 4150, above quoted, and in effect held that the attempt by the warehouse receipts to establish a lien upon the personal property was in conflict with the policy of that section, and therefore invalid as to a creditor. Gibson v. Chillicothe Bank was distinguished upon the ground that in that case the warehouse receipts were offered to show ownership, and not a mere agreement for securing an indebtedness. It will, however, be observed that in the Thorne Case the property in question was in the possession of the borrowers, and there was nothing in its character or situation to prevent an actual delivery of it to the lender.
In Hunt v. Bode, Assignee, ubi supra, which is the most recent case upon the subject to which our attention has been called, one Stothfang had delivered to a bank certain warehouse receipts for whiskey as collateral for a loan of money made to him by the bank, and thereafter undertook to make a second transfer or pledge to another party, subject to the claim of the Bank. A copy of this instrument was served upon the Bank, and it was notified to retain possession of the warehouse receipts pledged with it as collateral security for its claim against the pledgor, and after it was duly paid, the balance of the receipts were to be turned over to the second pledgee. The transaction was sustained, the court remarking, (p. 268): "Delivery of the property pledged is generally essential to a valid pledge, and it is equally true that to make a valid sale or transfer of any species or article of personal property, a delivery of the property sold or transferred is necessary. . . . But it does not follow that actual or physical delivery should always accompany the sale or transfer, and this is also true as to the pledging of choses in action or other kinds of personal property. The delivery in some cases may be symbolical, such as the handing over the writing which constitutes the title to the property, just as was done in this case, to secure the Atlas National Bank *410 for the money it had loaned to Stothfang. He delivered to the bank, not the one hundred and sixty-five barrels of whiskey, but the warehouse receipts for the same, which were its muniment of title and control of the property they represented. And when the pledgor desired to secure the payment of the note held against him by Dieckmann, he executed and delivered to him the transfer of all interest in the receipts which would remain, after the bank's claim should be satisfied. This transfer was not strictly a pledge, but an assignment and transfer of the stated interest in the warehouse receipts; but if it is desired that we call it a pledge, as has been done by counsel, we still observe, that constructive possession in the second pledgee would be sufficient, if the intent to deliver such possession is clearly apparent. It is the application of the familiar rule, that the transfer is complete and delivery made, when the owner has done all that he can do in the premises, and has given such possession to the pledgee or transferree as the nature of the property and its situation will permit. In this case Stothfang owned a valuable equity in the warehouse receipts held by the bank, as their sale afterwards made manifest, and it was such interest in them that could be made the subject of sale and transfer, and even pledge, and certainly Stothfang gave to Dieckmann possession of all interest in and title to the receipts which would remain after the debt due the bank was satisfied. This was all the delivery that could then be made, and it was at least a constructive delivery, and this we think meets the demands of the law."
We are unable to find in these decisions a recognition of the distinctions insisted upon by counsel for appellants. On the contrary, the Supreme Court of Ohio clearly recognizes the effectiveness of a symbolical delivery.
It is evident, also, that that court recognizes the force of a long continued commercial usage. And this lends peculiar significance to the conceded existence for more *411 than forty years of the custom and commercial usage set up by appellee in the amendment to his intervening petition, quoted in the prefatory statement. It is no answer to say that a trade custom or usage should not prevail against clear and unequivocal rules of law. This is a petitio principii. The question under consideration is whether certain portions of the written law are to be given by construction an effect different from that expressed in their language, on the ground that by authoritative decisions of the Supreme Court of the State the asserted policy has been found to be implied in them. Since it seems to us that neither the statutes nor the decisions go to the extent that is claimed for them by appellants, we may refer to the established custom as evidence of what has long been understood as the law; for, as this court held in Gibson v. Stevens, and as the Supreme Court of Ohio held in Gibson v. Chillicothe Bank, such usages are to be judicially recognized as a part of the law.
It results that by the local law the transactions in question, as between Rohrer and Pattison, had the effect of transferring to the latter the legal title and right to possession for the purposes of the agreement between them; and we think it is a matter of indifference whether the transaction be called a pledge, or an equitable pledge, or an equitable lien. The substance of the matter is for present purposes the same.
This being so, the superiority of Pattison's right over that of the trustee in bankruptcy is established by the decision of this court in Tancy v. Penn Bank, 232 U.S. 174.
Decree affirmed.