**DISTRICT OF COLUMBIA, Petitioner,**

v.

**INTERNATIONAL DISTRIBUTING CORPORATION, A Corporation, Respondent.**

**No. 17833.**

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 16, 1963.

Decided March 19, 1964.

Mr. Robert E. McCally, Asst. Corp. Counsel for the District of Columbia, with whom Messrs. Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, and Henry E. Wixon, Asst. Corp. Counsel, were on the brief, for petitioner.

Mr. Milford F. Schwartz, Washington, D. C., with whom Mr. William S. Hochman, Washington, D. C., was on the brief, for respondent.

Mr. Nicholas J. Chase, Washington, D. C., with whom Mr. Barnum L. Colton, Jr., Chevy Chase, Md., was on the brief, for Marvin & Snead Sales Corp., as amicus curiae, urging affirmance.

Before BAZELON, Chief Judge, and WASHINGTON and BASTIAN, Circuit Judges.

WASHINGTON, Circuit Judge:

The question before us in this case is whether a wholesaler of imported alcoholic beverages is liable for District of Columbia excise taxes, under D.C.Code § 25–124(a), on the sale of such beverages to foreign embassies and international organizations. The District of Columbia Tax Court held that there was no tax liability with respect to such sales. The District of Columbia petitions for review.

■ International Distributing Corporation ("the corporation") is engaged in the District of Columbia in the wholesale distribution of alcoholic beverages pursuant to license and permit issued respectively by the Alcoholic Beverage Control Board of the District of Columbia and by the United States Government. The corporation has on its premises a private bonded warehouse for storage of imported alcoholic beverages, to which it does not have independent access. A Deputy Collector of Customs is "in charge of" the warehouse [1] and has the only key; he opens the warehouse to place therein for storage alcoholic beverages from abroad purchased by the corporation and to withdraw therefrom such beverages as have been sold by the corporation. Neither the Federal law nor the District of Columbia Alcoholic Beverage Control Act imposes any tax on the beverages until they are to be withdrawn from the warehouse.

All the beverages involved in this case were stored in the bonded warehouse under the charge of a customs official as above stated, and all were sold by the corporation to "diplomatic purchasers." We use this term, for present purposes, as including foreign embassies and offi-

---

1. The warehouse is maintained under authority given by the Secretary of the Treasury pursuant to 19 U.S.C. § 1555, which provides inter alia:

"Except as otherwise provided in this chapter, bonded warehouses shall be used solely for the storage of imported merchandise and shall be placed in charge of a proper officer of the customs, who, together with the proprietor thereof, shall have joint custody of all merchandise stored in the warehouse * * *."

Wells Fargo Nevada National Bank v. Haslett Warehouse Co., 60 Cal.App. 225, 212 P. 647 (1922), points out that although the goods in a bonded warehouse are in the joint custody of the warehouse owner and the collector of customs, they nevertheless are "subject to the control" of the collector as to release of the goods from the warehouse. Cf. also Taney v. Penn Nat. Bank, 232 U.S. 174, 184, 34 S.Ct. 288, 290, 58 L.Ed. 558, 563 (1914), stating that the United States Government "is in complete control" of a distiller's bonded warehouse in which spirits are stored.

cial members of their staffs, members of the armed forces of foreign nations on duty in the United States, and personnel of international organizations. Prior to withdrawal from the warehouse, the diplomatic purchaser had applied to the United States State Department for leave to withdraw, and pursuant to that Department's request, had been furnished by the Secretary of the Treasury with an official document, permitting the diplomatic purchaser as the "withdrawer" to withdraw from the warehouse for consumption "free of all duty and tax" a specified quantity of a named beverage. The corporation, owner of the warehouse, also had signed the document, authorizing (as the "importer") the withdrawal. Upon presentation of this document or permit to the customs official, that official opened the warehouse and permitted removal of the quantity of beverages specified in the withdrawal permit given to the diplomatic purchaser. The corporation billed the latter for the price of the beverages so withdrawn. This price did not include or reflect the amount of the tax the District now seeks to collect. If the District is held entitled to collect the tax, all agree that the price charged in the future to the diplomatic purchaser will be increased so as to include or reflect its amount.

As indicated, no Federal tax or duty was imposed when the beverages were withdrawn from the warehouse in such a transaction. The District of Columbia however later assessed against the corporation under Section 25–124(a) of the District of Columbia Code an alcoholic beverage tax on the beverages withdrawn in this manner during the months of December 1961 and February 1962.[2]

Section 25–124(a), set out in the footnote,[3] provides for the levy, collection and payment of a tax on all of certain named alcoholic beverages "imported or brought into the District by a holder of a wholesaler's license." The Tax Court held that although the beverages involved here were imported into the United States by the corporation, they were not subject to the jurisdiction of the District until they were removed from the customs bonded warehouse; and since by that time they had been sold by the corporation, they were not "imported and brought into the District" by it. It concluded that the corporation was not liable for the tax. Its reasoning was as follows:

"The idea of bonded warehouses and their use by the United States

2. We are told that it had never before assessed a tax on such transactions.

3. "There shall be levied, collected, and paid on all of the following-named beverages manufactured by a holder of a manufacturer's license and on all of the said beverages imported or brought into the District by a holder of a wholesaler's license, except beverages as may be sold to a dealer licensed under the laws of any State or Territory of the United States and not licensed under this chapter, and on all beverages imported or brought into the District by a holder of a retailer's license, a tax at the following rates to be paid by the licensee in the manner hereinafter provided: (1) a tax of 15 cents on every wine-gallon of wine containing 14 per centum or less of alcohol by volume, other than champagne, sparkling wine, and any wine artificially carbonated, and a proportionate tax at a like rate on all fractional parts of such gallon; (2) a tax of 33 cents on every wine-gallon of wine containing more than 14 per centum of alcohol by volume, other than champagne, sparkling wine, and any wine artificially carbonated, and a proportionate tax at a like rate on all fractional parts of such gallon; (3) a tax of 45 cents on every wine-gallon of champagne, sparkling wine, and any wine artificially carbonated, and a proportionate tax at a like rate on all fractional parts of such gallon; (4) a tax of $1.25 on every wine-gallon of spirits and a proportionate tax at a like rate on all fractional parts of such gallon; (5) and a tax of $1.25 on every wine-gallon of alcohol and a proportionate tax at a like rate on all fractional parts of such gallon." The foregoing text is that which was in effect at the time of the transactions here involved. It has since been amended in certain respects not material here. See D.C.Code (Supp. II, 1963).

custom authorities negatives the proposition that at the time of sale the alcoholic beverages were in the possession of the petitioner [the corporation]. True it is that the private bonded warehouse was physically in the District of Columbia; and the liquors were stored therein; and in that sense they were in the District. In law, however, they were still without that jurisdiction, and did not become subject thereto until they had been withdrawn from the private bonded warehouse and removed from the control of the customs official. In the opinion of the Court the alcoholic beverages sold to the embassies and legations were brought into the District of Columbia by the purchasing embassies and legations."

We think the decision of the Tax Court is in clear accord with the congressional intention.

■■■ Reciprocity or comity in allowing diplomatic personnel to import goods

duty-free and tax-free for their own use has long been traditional in international law and relations,[4] and has been recognized by Congress.[5] This tradition must be considered by us in determining the intention of Congress in enacting the statutes here involved.

Section 25–124(d) of the D.C.Code, as amended (Supp. I, 1962),[6] provides:

"No tax [i. e., the tax imposed by Section 25–124(a)] shall be levied and collected on any alcohol exempt from tax under the laws of the United States, or on any alcohol sold for nonbeverage purposes by the holder of a manufacturer's or wholesaler's license, in accordance with the regulations promulgated by the Commissioners."

The District does not appear seriously to contend that the alcoholic beverages involved here were not, at the time of their importation and sale to embassies and international organizations, "exempt from tax under the laws of the United States."[7] The District argues princi-

4. See 2 Hyde, International Law Chiefly as Applied and Interpreted by the United States § 441 (2d Rev.Ed.1945); IV Hackworth, Digest of International Law 586–96 (1942). It has long been recognized that international law is part of the law of the United States. The Paquete Habana, 175 U.S. 677, 700, 20 S.Ct. 290, 299, 44 L.Ed. 320, 328 (1900); MacLeod v. United States, 229 U.S. 416, 434–435, 33 S.Ct. 955, 961, 57 L.Ed. 1260, 1268 (1913).

5. See, e. g., 19 U.S.C. § 196a(a), also known as Public Law 271, 63 Stat. 666, enacted in 1949, according to members of armed forces of foreign countries on duty in the United States the privilege of entering articles for consumption or withdrawing articles from a warehouse for consumption "free of all duties and internal revenue taxes imposed upon or by reason of importation"; 22 U.S.C. §§ 288a(d) and 288f, enacted in 1945, according to international organizations and their employees the same privileges, exemptions and immunities as are granted to foreign governments, their officers, and employees, including (§ 288a(d)) "customs duties and internal-revenue taxes imposed upon or by reason of importation, and the procedures in connec-

tion therewith"; 26 U.S.C. § 7511(a), enacted in 1954, granting an exemption from all internal revenue tax on articles imported by consular officers of foreign states and their employees, both articles accompanying them and those imported at any time during the exercise of their functions in the United States. See also 19 C.F.R. § 10.30 (1961), providing for the admission free of duty of articles for the official and personal use of members and attaches of foreign embassies and representatives of foreign governments upon request of the Department of State.

6. The provision was formerly known as Section 25–124(g). It is now known as Section 25–124(d). See Supp. I. But no change in language has occurred. The quoted text was in force at the time of the transactions here involved, and remains in effect.

7. In any case it is clear that they were. All of the beverages were released from the warehouse free of tax and duty. See the statutes and regulation cited in footnote 5, supra. A substantial portion of the withdrawals were indeed made by members of armed forces of foreign governments on duty in the United States and their withdrawal free of tax and

pally that the word "alcohol" in Section 25–124(d) should be limited to the definition given to that word by Section 25–103(a), and hence that the exemption from District tax does not apply to the alcoholic beverages involved in this case.[8] The pertinent parts of Section 25–103 are:

"In the interpretation of this chapter, unless the context indicates a different meaning:

"(a) The word 'alcohol' means ethyl alcohol, hydrated oxide of ethyl, or spirit of wine, from whatever source or by whatever processes produced.

"(b) The word 'spirits' means any beverage which contains alcohol obtained by distillation mixed with drinkable water and other substances in solution, including brandy, rum, whisky, cordials, and gin.

"(c) The word 'wine' means the product of the normal alcoholic fermentation of the juice of fresh, sound, ripe grapes, with the usual cellar treatment and necessary additions to correct defects due to climatic, saccharine and seasonal conditions, including champagne, sparkling, artificially carbonated and fortified wine. * * *

"(d) The word 'beer' means * *

"(e) The words 'alcoholic beverage' or 'beverage' include the four varieties of liquor above defined (alcohol, spirits, wine, and beer) and every liquid or solid, patented or not, containing alcohol, spirits, wine, or beer and capable of being consumed by a human being. * * * "

We think that the context and setting of Section 25–124(d) may well require that the term "alcohol," as used therein, generally be given a broader meaning than that contained in the definition in Section 25–103(a). However, we need not in this case pass on whether that would be so generally.[9] At least where diplomatic purchasers are involved, we must interpret Section 25–124(d) as protecting them from the tax which the District of Columbia here seeks to impose, and equally protecting from that tax the wholesaler who in selling to them follows the established procedures and law in adding his authorization to that already given by the Departments of State and Treasury for the withdrawal of such beverages from his bonded warehouse free of tax and duty.

We are reinforced in this conclusion by the provision in Section 25–137 of the District Code [10] which exempts "embassies or diplomatic representatives of foreign countries" from the prohibition against importation into the District of "any wines, spirits, or beer in a quantity in excess of one gallon at any one time." Congress may well have regarded the

---

duty was specifically authorized by the Secretary of the Treasury under Public Law 271, footnote 5, *supra*.

8. These were Scotch and Canadian whiskeys, rum, champagne, sherry, cognac, and various liqueurs.

9. We note only that Section 25–124(d) is a part of the same section which imposes the tax (Subsection (a), fn. 3, *supra*) on five types of beverages all containing alcohol of one kind or another and that Subsection (d) uses the term "any alcohol," not just "alcohol." Thus, it is susceptible of a construction which makes it applicable to all of the beverages named as taxable in Subsection (a).

10. Section 25–137, insofar as here pertinent, reads:
"(a) It shall be unlawful for anyone, except a public or common carrier or the holder of a manfacturer's, wholesaler's, or retailer's license issued under this chapter, to transport, import, bring, or ship or cause to be transported, imported, brought, or shipped into the District of Columbia from without the District of Columbia any wines, spirits, or beer in a quantity in excess of one gallon at any one time.
*    *    *    *    *    *
"(c) The provisions of this section shall not apply to bona fide possessors of old stocks who are moving into the District of Columbia nor to embassies or diplomatic representatives of foreign countries, nor to wines imported for religious or sacramental purposes, nor to wine, spirits, and beer to be delivered to the holder of a manufacturer's, wholesaler's, or retailer's license issued under this chapter."

diplomat who withdraws imported alcoholic beverages from a wholesaler's bonded warehouse as the importer thereof, in line with the Tax Court's view. If it did not, however, we think that in view of the inclusion of Section 25–137 (c), the failure of Congress to incorporate a specific tax exemption for diplomatic withdrawals in Section 25–124 was because it intended the general exemption in Section 25–124(d) to cover such withdrawals.[11]

The decision of the Tax Court is Affirmed.

---

11. In 1949 the Commissioners adopted a regulation, No. 2–146, authorizing wholesalers of alcoholic beverages to sell and deliver direct to embassies, foreign diplomatic representatives, and international organizations with the proviso that

"no provision of this section shall be construed as waiving the collection of the District of Columbia taxes upon such alcoholic beverages so sold and delivered."

We do not construe this proviso as an affirmative declaration that such sales are not exempt from the District tax, but if it was so intended, we think it is not in accord with the statutory provisions and the intention of Congress.