CHAPALAIN COMPAGNIE, d/b/a Hotel Brittany, in Roscoff, France, and Rene Cadiou, d/b/a Hotel Des Bains, for themselves and on behalf of all others similarly situated

v.

STANDARD OIL COMPANY (INDIANA) et al.

Gaby BENGANTON, for himself and on behalf of all others similarly situated

v.

STANDARD OIL COMPANY (INDIANA) et al.

BRETAGNE–ANGLETERRE–IRLANDE, S. A. (SOCIETY ANONYMOUS), a French Corporation, d/b/a Brittany Ferries, for itself and on behalf of all others similarly situated

v.

STANDARD OIL COMPANY (INDIANA) et al.

Nos. 78 C 1975, 78 C 1983 and 78 C 1984.

United States District Court, N. D. Illinois, E. D.

Dec. 7, 1978.

John J. Kennelly, Kevin M. Forde, Chicago, Ill., for plaintiffs.

Frank Cicero, Jr., Kirkland & Ellis, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

McGARR, District Judge.

## I. FACTS

On March 16, 1978, the tanker Amoco Cadiz, while under tow after having lost both an anchor and its hydraulic steering mechanism, went aground and became stranded on rocks off the coast of Brittany, France. The Amoco Cadiz was enroute from the Persian Gulf to the Netherlands, laden with approximately 220,000 tons of crude oil. In rough waters, the disabled tanker broke apart on rocks, disgorging its oleic cargo. The resultant pollution of the Breton coast and marine environment is that on which the plaintiffs base their claims in these three class actions.

These lawsuits were filed in the Circuit Court of Cook County, Illinois, on April 20, 1978, against Standard Oil Company of Indiana, Amoco International Oil Company, Amoco Transport Company, and Claude Phillips. On May 19, 1978, the defendants removed the cases to this court. The causes are before the court on the plaintiffs' motions to remand.

## II. BASES OF THE MOTIONS

A. Paraphrasing the plaintiffs' positions, they contend that these cases were "improvidently" removed in that this court does not have exclusive jurisdiction within the intent of 28 U.S.C. §§ 1331, 1350 (1976), and that because at least one of the defendants is a resident of this state, removal jurisdiction cannot be based on diversity of citizenship, 28 U.S.C. § 1332 (1976). See 28 U.S.C. § 1441(b) (1976).

Plaintiffs further maintain that these cases are based simply on the tort of negligence and that federal courts must not encroach upon the right of state courts to hear such actions. In support, the plaintiffs point out the fact that the complaints filed herein do not plead claims contingent upon federal statutes or treaties. In addition, because the state court may properly assert personal jurisdiction, the state court may interpret any federal statutes or treaties which may be applicable.

B. In opposition to the motions to remand, the defendants allege that the causes of action arise under a treaty to which the United States is a signatory, a treaty to which the Republic of France (but not the United States) is a party and, as a result of the applicability of these treaties and the need for uniformity in rules of decision thereunder, federal common law. For these reasons, the defendants assert that this court had original jurisdiction, thus removal jurisdiction.

## III. THE CONTOURS OF FEDERAL JURISDICTION

### A. Removal Jurisdiction

The motions to remand seem to be based in part on a misunderstanding of removal jurisdiction. These cases were removed from the state court to this court under 28

U.S.C. § 1441(a), (b) (1976). The statute provides in part as follows:

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.

28 U.S.C. § 1441 (1976)

Thus, removal jurisdiction is keyed to original jurisdiction. The original jurisdiction of the federal district courts is governed both by the Constitution and statutes. Article III § 2 provides in pertinent part:

The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority . . .

U.S.Const. art. III § 2 cl. 1

Pursuant to this constitutional provision, Congress has enacted a general jurisdictional statute which reads as follows:

The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000 exclusive of interest or costs, and arises under the Constitution, laws or treaties of the United States.
. . .

28 U.S.C. § 1331(a) (1976)

B. The Interpretation of Jurisdictional Grants

1. Article III § 2

In *Osborn v. Bank of the United States*, 22 U.S. (9 Wheat.) 738, 6 L.Ed. 204 (1824), Chief Justice Marshall gave us the first significant interpretation of constitutionally permissible jurisdiction in the lower federal courts. The companion case to *Osborn, Bank of the United States v. Planter's Bank*, 22 U.S. (9 Wheat.) 904, 6 L.Ed. 244 (1824), was a contract action in which the appellants argued against the exercise of federal jurisdiction, claiming that general principles of law, not federal statutes or common law, governed the decision. The Court in *Osborn* observed that the validity of the contract depended on federal law, and the bank, being statutorily created and its powers statutorily delimited, was sufficient to invoke federal jurisdiction. The Chief Justice interpreted "arising under" in Article III § 2 in terms of what has been termed the "ingredient" theory.

We think, then, that when a question to which the judicial power of the Union is extended by the constitution, forms an ingredient of the original cause, it is in the power of Congress to give the Circuit Courts jurisdiction of that cause, although other questions of fact or of law may be involved in it.

\*     \*     \*     \*     \*     \*

If . . . the title or right set up by the party may be defeated by one construction of the constitution or law of the United States, and sustained by the opposition construction [federal jurisdiction may properly be asserted].

22 U.S. (9 Wheat.) at 821, 6 L.Ed. 204.

This theory reflects a very expansive definition of the phrase "arising under" in Article III § 2. It must be noted, however, that *Osborn* concerned the constitutionality of a statutory grant of jurisdiction, namely, that which entitled the Bank of the United States to sue and be sued in federal courts, a question related to, but fundamentally different from, the question of whether a case falls within a constitutional, statutory grant of jurisdiction. Nevertheless, *Osborn* contains illuminating dicta regarding the interpretation of the key words, "arising under" and the proper exercise of federal jurisdiction within the parameters of Article III § 2. In addition, it will be seen that identical language in 28 U.S.C. § 1331(a) (1976) has been interpreted much more narrowly. *See Pacific Railroad Removal Cases*, 115 U.S. 1, 5 S.Ct. 1113, 29 L.Ed. 319 (1885).

### 2. 28 U.S.C. § 1331(a) (1976)

When the question raised is whether a given case falls within § 1331(a) courts have been more restrictive in their analysis. The Supreme Court, for practical reasons, has held that § 1331 and its statutory predecessor do not confer jurisdiction to the full extent permissible under Article III § 2 despite the similarity of their language. *Shoshone Mining Co. v. Rutter*, 177 U.S. 505, 506, 20 S.Ct. 726, 44 L.Ed. 864 (1900); *National Mutual Ins. Co. v. Tidewater Transfer Co.*, 337 U.S. 582, 613–15, 69 S.Ct. 1173, 93 L.Ed. 1556 (1949); *see* Hart & Wechsler, The Federal Courts and the Federal System, 870–73 (2d ed. 1973).

Decisions under the general statutory grant have tested jurisdiction in terms of the presence of an issue calling for the interpretation of federal law, as an integral part of the plaintiff's claim. *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 460, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957) (Frankfurter, J., dissenting); *see e. g., Gully v. First National Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936). It has been held sufficient that some aspect of federal law be essential to the plaintiff's success, *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921), although it is occasionally stated that the cause of action must be derived from federal law. *See American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 60 L.Ed. 987 (1916). As Justice Frankfurter pointed out in his dissent in *Lincoln Mills*, "the litigation-provoking problem has been the degree to which federal law must be in the forefront of the case and not collateral, peripheral or remote", 353 U.S. at 470, 77 S.Ct. at 928, or raised as, or in anticipation of, a defense. *See Louisville & Nashville R. R. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908).

The case most utilized in determining whether federal question jurisdiction exists is *Gully v. First National Bank, supra. Gully* was a suit to collect taxes imposed on a national bank by a state. Writing for a unanimous Court (one Justice taking no part in the decision), Justice Cardozo stated that "[t]he right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another." *Id.* 299 U.S. at 112, 57 S.Ct. at 97. Thus, the federal issue must be a direct element of the plaintiff's claim. One commentator has suggested that for original federal question jurisdiction to arise there must be "a substantial claim founded 'directly' upon federal law." Mishkin, *The Federal "Question" in the District Courts*, 53 Col.L.Rev. 157, 159 (1953).

█ With this background established, the test for determining whether original federal question jurisdiction exists under 28 U.S.C. § 1331 (1976) may be stated as follows: A suit arises under the Constitution, laws or treaties of the United States where it actually and substantially involves a dispute or controversy concerning the validity or interpretation of such federal issues, the determination of which will have a direct impact on the plaintiff's success or failure.

Having determined the appropriate test respecting when a suit "arises under" federal law within the meaning of 28 U.S.C. § 1331 (1976), there remain the issues of when a suit arises under a treaty and of what constitutes a "law", under each of which the defendants contend the plaintiffs' claims arose.

> The extension of federal question jurisdiction to treaties is of limited significance because it is rare that the relation of a treaty to the plaintiff's claim will be sufficiently direct to satisfy the test of "arising under". The principles that have developed as to the meaning of those words ordinarily require rejection of the argument that a case arises under a treaty.
>
> 13 Wright, Miller & Cooper, Federal Practice and Procedure, § 3563 at p. 425 (1975)

The problem often arises that when dealing with federal question jurisdiction based upon a treaty, the claim itself, the right of recovery, is not derived from the treaty. Rather, the treaty merely dictates venue,

procedures and standards of liability. For example, the Convention for the Unification of Certain Rules Relating to International Transportation by Air, 49 Stat. 3000 (Warsaw Convention), provides for venue, the imposition and limitation of liability and contributory negligence, all of which must be applied in any action for wrongful death occurring in an international air flight. Nevertheless, courts have held that such cases arise under state wrongful death statutes. *E. g., Noel v. Linea Aeropostal Venezolana*, 247 F.2d 677 (2d Cir.), *cert. denied* 355 U.S. 907, 78 S.Ct. 334, 2 L.Ed.2d 262 (1957), *and, Komlos v. Compagnie Nationale Air France*, 209 F.2d 436 (2d Cir. 1953), *cert. denied* 348 U.S. 819, 75 S.Ct. 31, 99 L.Ed. 646 (1954), *overruled, Benjamins v. British European Airways*, 572 F.2d 913 (2d Cir. 1978).

As is obvious from the citations above, the Second Circuit has recently decided to abandon the rule established in *Noel* and *Komlos*. However, in so doing the court emphasized that the Warsaw " 'Convention was intended to act as an international uniform law' " to avoid the " 'prospect of a junglelike chaos' " which could result given the number of suits brought for wrongful death. *Id.* at 917, *citing Reed v. Wiser*, 555 F.2d 1079, 1083, 1092 (2d Cir.), *cert. denied* 434 U.S. 922, 98 S.Ct. 399, 54 L.Ed.2d 279 (1977). The analysis of the overruled cases nevertheless sheds some light on the difficulty involved in the examination of the origin of a right of action under a treaty and thus the availability of a federal forum. Furthermore, only the Second Circuit has ruled that wrongful death actions arise under the Warsaw Convention, *see Maugnie v. Compagnie Nationale Air France*, 549 F.2d 1256 (9th Cir.), *cert. denied* 431 U.S. 974, 97 S.Ct. 2939, 53 L.Ed.2d 1073 (1977), and the Supreme Court has previously denied certiorari in every case where federal jurisdiction was found lacking.

Also concerning the Warsaw Convention, provisions dealing with lost baggage specifically grant a right of action for such damage. In suits for lost baggage, federal question jurisdiction is more readily apparent, and has been held to exist. *Seth v. British Overseas Airways Corp.*, 329 F.2d 302 (1st Cir.), *cert. denied*, 379 U.S. 858, 85 S.Ct. 114, 13 L.Ed.2d 61 (1964).

Thus, as was shown above as the general rule, the mere relevance of federal issues (in the above cases involving a treaty), is insufficient to invoke federal jurisdiction. If the treaty concerns collateral or secondary issues rather than an essential allegation of the complaint or the existence of a right of action, federal jurisidiction may not be invoked under 28 U.S.C. § 1331 (1976). If the construction or interpretation of a treaty will determine the plaintiff's success, then federal question jurisdiction does in fact exist. *Hidalgo Water Control and Improvement District v. Hedrick*, 226 F.2d 1, *cert. denied* 350 U.S. 983, 76 S.Ct. 469, 100 L.Ed. 851 (1955); *Skokomish Indian Tribe v. France*, 269 F.2d 555 (9th Cir. 1959).

Turning now to the question of the meaning of the word "law" in 28 U.S.C. § 1331 (1976), it is well settled that the term includes federal common law in addition to federal statutes, and interpretations thereof, in the federal courts. *See Illinois v. City of Milwaukee*, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972) and the cases cited therein. Federal common law has been defined as "case law which is judicially fashioned rather than interpretive of the Federal Constitution, statutes, treaties," etc. Annot. 31 L.Ed.2d 1006, 1010 (1972). A more expansive definition, that is, including all federal case law, seems to be favored by the Supreme Court. *Illinois v. City of Milwaukee, supra* at 99, 92 S.Ct. 1385. In either case, the body of law which pertains to treaties to which the United States is not a signatory and other issues of international dimension may be classified as federal common law. *Hines v. Davidowitz*, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941); *Zschernig v. Miller*, 389 U.S. 429, 88 S.Ct. 664, 19 L.Ed.2d 683 (1968); *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964); *District of Columbia v. International Distributing Corp.*, 118 U.S.App.D.C. 71, 331 F.2d 817 (1964).

## IV. ANALYSIS

### A. Plaintiffs' Claims

The complaints in these actions sound in tort. Plaintiffs allege that the defendants knowingly caused the tanker Amoco Cadiz, in spite of its unseaworthiness, to approach unreasonably close to the Breton coast, thereby running aground in heavy seas, spilling the crude oil it was transporting.

■ In support of the motion to remand, the plaintiffs contend that because they have not pleaded the application of a treaty or federal common law, federal jurisdiction does not exist. However, the federal courts, being courts of limited constitutional and statutory jurisdiction, have the duty to inquire into the propriety of the exercise of their jurisdiction. *California v. LaRue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972); *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 74 S.Ct. 476, 98 L.Ed. 1069 (1957).

■ As a general rule, the federal issues must be apparent on the face of the complaint, unaided by the answer or the petition for removal. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). However, the plaintiffs may not defeat original federal jurisdiction, hence, removal jurisdiction, by adroitly avoiding the citation of federal issues or authority in the complaint. *See Rettig v. Arlington Heights Federal Savings & Loan Association*, 405 F.Supp. 819, 823 (N.D.Ill. 1975), and the cases cited therein. It is for these reasons that the court reaches the issue of the application of treaties and federal common law.

### B. Federal Common Law

The International Convention on Civil Liability for Oil Pollution Damage (Brussels Convention), 9 Int'l.Leg.Mat. 40 (1970), was intended "to ensure that adequate compensation is [made] available to persons who suffer damage caused by pollution resulting from the escape or discharge of oil from ships" and "to adopt uniform international rules and procedures for determining questions of liability and providing adequate compensation in such cases." Preamble. Article II of the convention defines the scope of its application to suits for pollution damage to the territory and territorial waters of contracting states. Article III Clause 1 imposes liability for such pollution on the owner of the vessel, while Clause 4 makes clear that the convention provides mandatory standards and procedures in suits for the recovery of losses due to pollution damage.

Because the United States is not a signatory to this convention, the plaintiffs' claims do not "arise under" this treaty within the meaning of 28 U.S.C. § 1331 (1976). The issue remains, however, of whether the claims "arise under" federal common law in that the interpretation or effect of the convention is a federal issue.

The difficulty in this regard is reflected in the reluctance of courts to find a cause of action arising under a treaty, let alone federal common law respecting a treaty. It would be incongruous to find in favor of the exercise of federal jurisdiction more readily in the case of a treaty to which the United States is not a party.

Analogizing to actions for wrongful death in international air flights, as shown above, almost all courts have held that although the Warsaw Convention provides rules and procedures, such actions arise under state wrongful death statutes, not the convention. So too in the case of the Brussels Convention the logic is too tenuous to allow a finding of federal jurisdiction in the application of the convention by means of federal common law, to the plaintiffs' claims. It is noteworthy that the preamble states that the contracting parties recognized the need for *adequate* compensation and for *uniform* rules and procedures. The parties did not indicate that the convention was intended to establish a right of recovery. The application of the treaty is more or less mechanical, if in fact it is to be applied. The convention establishes standards of liability, rules and procedures to follow in pollution cases. Little or no interpretation is required, besides the threshold question of its application. Moreover, the

convention imposes liability on the owner of the vessel, and his agents. Some of the defendants herein, therefore, may not even be subject to the provisions of the treaty.

 This threshold question of the application of the treaty, by itself, is insufficient to invoke federal jurisdiction. It is obvious that the question of whether a federal issue is present is not, in and of itself, a federal issue.

Therefore, this court finds that the plaintiffs' claims do not arise under federal common law to the extent, as defendants claim, issues involving the Brussels Convention may be controlling in the prosecution of or defense to the plaintiffs' claims. Plaintiffs' claims do not actually and substantially involve a dispute or controversy concerning the interpretation or effect of federal common law, the determination of which would have a direct impact on the plaintiffs' success or failure.

*C. Treaties: Convention on the International Regulations for Preventing Collisions at Sea, TIAS No. 8587, [1978] Treaties in Force 328*

Plaintiffs' cause of action for negligence and claim for equitable relief will necessarily involve the defendants' compliance or noncompliance with this treaty. The treaty and regulations (33 C.F.R. Part 87 (1977)) establish mandatory traffic lanes and distances from the coastline of vessels travelling through the English Channel. However, if raised by the plaintiffs, either the treaty would establish a standard of conduct by which the defendants' alleged negligence will be measured, or the treaty would set a standard affecting the plaintiffs' right to the equitable relief they seek.

If the ingredient theory of *Osborn* were the test for determining federal jurisdiction under 28 U.S.C. § 1331 (1976), there can be no dispute that such jurisdiction may be invoked. However, the more restrictive analysis detailed in III, B. 2. above provides the guiding principles with respect to § 1331.

If the treaty is raised by the defendants, whether with respect to the negligence claim or the claim for equitable relief, the application of the treaty (and compliance therewith) would take on the character of a defense to plaintiffs' claims. A federal issue raised as a defense, absent other federal issues, is insufficient to justify the exercise of federal jurisdiction. *See Louisville & Nashville R. R. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908).

Plaintiffs' claims, therefore, do not actually and substantially involve a dispute or controversy concerning the validity or construction of the Brussels Convention, the determination of which would have a direct impact on the plaintiffs' success or failure.

For the foregoing reasons, the plaintiffs' motions to remand the cases to the Circuit Court of Cook County, Illinois are hereby granted.